WILLIAM H. WEIBELER v. PATRICK FORD (MARGARET FORD, Garnishee).[1]

June 20, 1895.

Nos. 9277—(161).

**Garnishment—Supplemental Complaint—Trial by Jury.**

On the issues formed by the supplemental complaint and answer thereto filed in a garnishment proceeding commenced on a judgment neither party is entitled to a jury trial as a matter of right.

**Findings Sustained.**

Evidence *held* sufficient to sustain the findings and order for judgment.

**Parol Trust.**                    .  ,

A certain parol trust is conceded to be unenforceable, and the evidence offered to establish the same is *held* to be incompetent and immaterial.

Appeal by defendant and garnishee from an order of the district court for Ramsey county, Willis, J., denying a motion for a new trial. Affirmed.

*Frank Ford*, for appellant.

*F. C. Irwin* and *Southworth & Coller*, for respondent.

CANTY, J. The plaintiff holds a judgment for $747, entered in 1885 against the defendant Patrick Ford. This appeal grows out of a garnishment proceeding commenced on said judgment, in which Margaret Ford, the wife of Patrick, is charged as garnishee. On

[1] Reported in 63 N. W. 1075.

her disclosure she denied any indebtedness to the defendant, or any control of any money, property, or effects of the defendant. Thereupon the plaintiff filed a supplemental complaint under the statute, and issues were made up between the parties, which were tried by the court below without a jury. The court found for plaintiff, and ordered judgment against the garnishee. From an order denying her motion for a new trial, she appeals.

1. On the issues made by the supplemental complaint and her answer thereto, the garnishee demanded a jury trial, which was denied by the court below, and this is assigned as error. We are of the opinion that a jury trial is not a matter of right in such a case. The statute is silent on the question. If the plaintiff had brought supplemental proceedings, or a creditors' bill, instead of garnishment, the same questions might have been litigated, and the same relief obtained; but clearly in neither of those proceedings would this garnishee be entitled to a jury trial. It seems to us that the present proceeding stands on the same footing, and the court did not err in refusing her demand for a jury trial.

2. It is assigned as error that the decision is not sustained by the evidence. For many years prior to January 19, 1892, Elizabeth Conroy, the mother of Patrick Ford, was the owner of a certain quarter section of land. On that day she and her husband, Thomas Conroy, conveyed the same to Rev. Thomas Kennedy. Thereafter, on January 20, she died. Thereafter, on January 23, the Reverend Kennedy conveyed the land to said Thomas Conroy. Thereafter, in March, 1893, Conroy sold the land for $4,000 in cash. Of the proceeds he kept $1,000 for his own use; gave $1,000 to Hannah Sullivan, his stepdaughter, a sister of Patrick Ford; and disposed of the other $2,000 for the benefit of Patrick Ford alone, or of him and his family, as follows: $370 was used in paying Patrick Ford's debts, $150 of which went to pay the expense of probating his father's estate, $100, that he owed the donor, Thomas Conroy, was retained by him, and the balance of the $370 was used by Conroy to pay a note of $120, which Ford owed at Le Sueur; the other $1,630 was delivered to Ford personally.

There is no dispute about these facts. There is a dispute as to the purposes for which this $1,630 was delivered to Ford. The plaintiff claims it was delivered to him for his own use and benefit;

the garnishee claims that it was delivered to him as a messenger, merely to bring it to her; that it was a gift to her for the use of herself and her family; and that he did so bring and deliver it to her. On this point Thomas Conroy testified: "Q. What did you do with that $4,000? A. I gave $2,000 of this money, by his mother's request to me several years before she died, to Patrick Ford, on condition that he build a house for his children; but not for himself, as he was incapable of holding property." He further testified that he did not give the money to Ford personally, but his daughter Ellen did so for him, when he was not present; that he does not know whether or not Ford agreed to build a house; that he never had any talk with Ford about giving the money to him, or what he was to do with it, or what use he was to make of it after he received it, and never had any talk with his daughter Ellen, who delivered the money to Ford, as to what Ford was to do with it.

On cross-examination he states that he never intended to give any of this money to Ford, but intended it for Ford's wife and family, as carrying out the requests often made by his late wife. It is true that Patrick Ford testifies that his stepfather, Thomas Conroy, told him that he was going to give this money to Ford's wife and family; that Ford's mother always so intended, and that he was going to carry out her wishes; and that, when his sister Ellen gave him the money, she said it was the money intended for his wife and family. Ellen also testifies that she handed the money to him, and told him to give it to his wife, and have her put it in the bank. Where the evidence is conflicting, the findings of the trial court are conclusive. We are clearly of the opinion that the findings of the trial court that this money was a gift from Thomas Conroy to Patrick Ford, and not to his wife, are sustained by the evidence.

3. It is assigned as error that the court below refused to permit the garnishee to prove conversations between Elizabeth Conroy and other members of this family in her lifetime, in which she stated that she did not intend that any of her property should go to her son Patrick, or in payment of this judgment; that she intended his part to go to his wife, for herself and children; that Patrick would fritter it away, and she did not desire her property to go that way; and that the property was conveyed to Thomas Conroy with the understanding and request that he should carry out her desires.

It is admitted by appellant that this parol trust was not enforceable; that, if Thomas Conroy had disregarded this parol trust, and given the money to Patrick absolutely, and for his own use and benefit, the parol trust would have no effect, and give his wife no rights. But it is claimed that, if the parol trust was carried out by Conroy, it would be valid when executed, and "that this is not a case where the grantee of real estate is resisting a parol trust." That is true for the reason that the subject of the alleged parol trust had already passed out of that grantee's hands, and beyond his control. The question is, to whom did Conroy make the gift? If he made it to the wife of Patrick Ford, it is her money, whether there was any parol trust or not. If he made it to Patrick himself, it was his money, whether there was a parol trust or not. Then, for the purpose of this case, the existence or nonexistence of the parol trust is not material.

This disposes of the case, and the order appealed from is affirmed.