IGNATZ TYRNAUER et al., Appellants, *v.* TRAVELERS INSURANCE COMPANY et al., Respondents.

Second Department, December 29, 1961.

294

*Moses M. Zelig* for appellants.

*Terhune, Gibbons & Mulvehill* (*John G. Donovan* of counsel), for respondents.

BRENNAN, J.  In this declaratory judgment action, plaintiffs, Ignatz and David Tyrnauer, seek an adjudication that, at the time of an automobile accident on August 6, 1956, they were insured by the defendants, the Travelers Insurance Company and the Travelers Indemnity Company (hereinafter referred to as insurers) under a certain policy of liability insurance, and that the insurers are obligated to defend certain actions arising from such accident.

Plaintiffs are brothers and rabbis who teach at the Yeshiva Tora Vejire, Brooklyn, New York, which conducts a charitable Summer camp for its students at Napanoch, New York, known as Camp Rav Tov, Inc.  Ignatz is vice-president and his brother David is secretary-treasurer of the camp corporation, and both are directors.  While this camp commenced operations in July, 1955, it was not incorporated until sometime in November, 1955.

On July 8, 1955, plaintiff, Ignatz Tyrnauer, purchased a Chevrolet station wagon.  On the same day, as the named insured, he obtained a liability policy from defendant, Travelers

Insurance Company, through a broker, Ernest Rosenfeld; the policy being in the 1A risk class.

On January 19, 1956, Ignatz transferred title to the vehicle to the camp corporation, which thereupon registered it in its own name. Subsequently, the defendants, who were unaware of this transfer, issued a renewal policy to Ignatz, as the named insured, for a one-year period commencing July 8, 1956.

With respect to such transfer, upon the trial Ignatz testified: "I wanted to give it [the station wagon car] to the camp, to donate it to the camp. I wanted to buy a new car. That was in January of 1956. Meanwhile I wanted to buy another car and somehow I couldn't manage, so I still kept the car."

On August 3, 1956, David received permission from his brother Ignatz to drive the vehicle to the camp from their home in Brooklyn. Thereafter, further permission was received by David to drive six rabbis, who were visiting the camp, to Ellenville; and, from there, David was to continue on to Brooklyn. On August 6, while en route to Ellenville, an accident occurred; one passenger was killed and two sustained injuries.

That same day (Aug. 6, 1956) Ignatz gave the broker the first quarter insurance premium and informed him of the accident and the registration change. By letter dated August 10, the insurers informed Ignatz that they were canceling the policy as of August 22, 1956 (the policy provided for 10 days' notice of cancellation). Thereafter, the insurers requested and received the earned premium of $17.47 for the period July 8 to August 22, which was paid by the broker. Ignatz refused the broker's tender of the unearned first quarter premium.

The insurers refused to defend plaintiff, David Tyrnauer, in a suit emanating from the accident, stating in a letter, dated January 6, 1958, that there was no coverage because Camp Rav Tov, Inc., was the owner and also because Ignatz had breached material declarations in the policy relating to the ownership of the vehicle.

Examination of the policy reveals that the insurers agreed, in consideration of the payment of the premium and in reliance upon the statements in the declarations, "To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, * * * sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile."

The policy defines an insured as including: "the named insured * * * and any person or organization legally responsible for the use thereof [the automobile], provided the

actual use of the automobile is by the *named insured*  \*  \*  \*
or with  \*  \*  \* [his] permission '' (emphasis supplied).

The automobile is defined as '' the motor vehicle [i.e., Chevrolet]  \*  \*  \* described in this policy '' and that '' Except with respect to bailment lease, conditional sale, purchase agreement, mortgage or other encumbrance, the named insured is *the sole* owner of the automobile, unless otherwise stated herein '' (emphasis supplied). It states further that '' this policy applies only to accidents which occur  \*  \*  \* while the automobile  \*  \*  \* is *owned, maintained and used* for [' Pleasure and Business '] '' (emphasis supplied).

The policy also provides that '' Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; '' and that the insured's declarations are representations, and the policy is issued in reliance thereon.

Plaintiffs contend that they must be considered as insureds within the meaning of the policy. Defendants contend that the transfer of ownership of the car ended all coverage.

The general proposition is clear: that liability coverage, born of the ownership, maintenance or use of a stated automobile, terminates upon the transfer of said vehicle unless the insurer approves the extension of coverage (*Phoenix Ins. Co.* v. *Guthiel*, 2 N Y 2d 584; *Lavine* v. *Indemnity Ins. Co. of North America*, 260 N. Y. 399; *Ireland* v. *Firemen's Fund Ind. Co.*, 281 App. Div. 1007, affd. 1 N Y 2d 655). Approval cannot be inferred from mere silence or a failure to disclaim (*Truglio* v. *Zurich Gen. Acc. & Liab. Ins. Co.*, 247 N. Y. 423).

However, in *Abrams* v. *Maryland Cas. Co.* (300 N. Y. 80), one Cohen, a truck driver employed by Linden, purchased a truck to be used in Linden's business and registered it in his (Cohen's) name. Linden, apparently, had supplied the consideration and Cohen transferred the registered ownership to Linden as security for this indebtedness. Linden received a policy of liability insurance on the truck which required the insurer to pay to an injured party within policy limits any sum (p. 83) '' which ' the insured shall become obliged to pay by reason of the liability imposed upon him by law for damages  \*  \*  \* sustained by any person or persons, caused by accident and arising out of the ownership, maintenance or use of the automobile '.'' Cohen subsequently satisfied his indebtedness to Linden and the registered ownership was returned to him. The insurer was without knowledge of these facts. Thereafter, while Cohen was driving the truck delivering Linden's products an accident occurred. The policy provided that it did not apply to an accident which occurred '' ' after the transfer  \*  \*  \* of

the *interest* of the named insured '" (emphasis supplied) without defendant's written consent.

The Court of Appeals held (in the *Abrams* case) that the interest of the named insured (Linden) was more than mere ownership and that the transfer to Cohen (for a *consideration*) did not divest it (Linden) of an insurable interest. The policy continued to protect Linden, "the *named insured*," for any liability arising from the maintenance and use of the truck. The court stated (p. 85): "Since, then, Linden continued to have the truck used in its business, it retained an interest that was insured by the policy, and the transfer of ownership did not relieve defendant of its obligation."

The record is clear here, and the trial court so found, that following the transfer to the camp, Ignatz retained the exclusive control and possession of the vehicle. He had the sole use thereof and paid, individually, all maintenance, insurance and operating expenses arising therefrom.

Not only did Ignatz continue to have an interest in this vehicle based upon his exclusive possession and control thereof (*Abrams* v. *Maryland Cas. Co., supra*), but he also remained liable under section 59 (now § 388) of the Vehicle and Traffic Law which makes the "owner" of an automobile liable for injury caused by any person whether or not he is using the vehicle in the owner's business. In 1958, the Legislature defined "owner" as "any person, other than a lien holder, having the property in or title to the vehicle, and also any lessee or bailee having the *exclusive use* thereof, under a lease or *otherwise,* for a period greater than thirty days" (emphasis supplied). (L. 1958, ch. 577; Vehicle and Traffic Law, § 59.) This amendment, recommended by the Law Revision Commission, was intended only to *clarify* the definition of an owner (see N. Y. Legis. Doc., 1958, No. 65 [G]; L. 1958, ch. 577 [note]); but it gives added support to our conclusion that Ignatz was responsible for the operation of the vehicle at the time of this accident.

The cases of *Phoenix Ins. Co.* v. *Guthiel* (2 N Y 2d 584, *supra*) and *Mason* v. *Allstate Ins. Co.* (12 A D 2d 138) are inapposite. In those cases, not only did the registered owners transfer title, but they also relinquished their possession, and all right to control said vehicles. Indeed, in the *Mason* case (p. 143) we wrote that: "The rule with respect to policy provisions such as those here involved is clearly stated in the dissenting opinion of FULD, J., in *Switzer* v. *Merchants Mut. Cas. Co.* (2 N Y 2d 575, 583) as follows: 'That provision [the provision defining an "insured" as the named insured or one using the automobile

" with his permission "] was designed to render the insurer responsible if the automobile was within the actual control of the insured, for, it may not be gainsaid, the grant of permission to use an automobile by one having no control over it would be meaningless. Once an owner effects a sale, even though a contract of conditional sale (Vehicle and Traffic Law, § 59), he gives up all control over the vehicle and is powerless to affect its use; it would, therefore, be the loosest use of terms, the barest of fictions, to say that the new owner, when operating the car, is doing so with the " permission " of the vendor — certainly, within the meaning of the policy terms.' That there was no disagreement with Judge Fuld's reasoning in that respect, insofar as the general application of the rule is concerned, is indicated by the majority opinions in the same case ". Moreover, while the subject policy states that it " applies only to accidents which occur * * * while the automobile * * * is owned, maintained and used " as stated in the declarations, neither all interest of the named insured in the vehicle nor his liability under our statutes ceased upon the transfer of ownership. In our opinion, the transfer of ownership here did not constitute a material breach of the policy conditions (Insurance Law, § 150, subd. 2).

In *Pauli* v. *St. Paul Mercury Ind. Co.* (167 Misc. 417, affd. 255 App. Div. 935, motion for leave to appeal denied 280 N. Y. 853), the named insured stated that he was the sole owner of a vehicle and his policy of insurance provided that he shall be indemnified against liability " caused by accident and arising out of the ownership, maintenance or use of the automobile." The named insured, however, had purchased the vehicle under a conditional sales agreement and $500 was still due and owing at the time the policy was issued. Following an accident the insurer disclaimed liability. The court, in rejecting the argument that the policy was void, wrote (p. 424) : " Under an automobile liability policy indemnifying the insured against liability imposed by reason of the ownership, maintenance or use of the automobile, title to the automobile, either legal or equitable, is not necessary. All that is necessary is legal possession or responsibility for the use thereof."

The court in the *Pauli* case (*supra*, p. 424) also quoted as follows from Blashfield's Cyclopedia of Automobile Law and Practice (Perm. ed., vol. 6, § 3873, p. 538), which was cited with approval by the Court of Appeals in *Abrams* v. *Maryland Cas. Co.* (300 N. Y. 80, 85, *supra*) :

" ' The rule requiring possession by the insured of an insurable interest in the property forming the subject matter of the

insurance, which prevails generally in casualty insurance, is not applicable to liability indemnity policies.

"'The character of the insurance is quite different from insurance, against injury or loss, of the property insured by fire, theft, collision, or the like, where the insured is required to have some real interest in the property insured; in the case of liability insurance the risk and hazard insured against is not the injury or loss of the property named in the policy, but against loss and injury caused by the use of the property therein named, for which the insured might be liable, and the right of the insured to recover does not depend upon his being the holder, in fact, of either a legal or equitable title or interest in the property, but whether he is primarily charged at law or in equity with an obligation for which he is liable.'"

While it is true that a contract of insurance is personal (*Matter of Kolb* v. *Brummer,* 185 App. Div. 835, affd. 226 N. Y. 570; *Mapu* v. *Agricultural Ins. Co.,* 244 App. Div. 268), the insurers under the subject policy assumed coverage for liability resulting from the "ownership, maintenance or use" of the described automobile. Included as an insured under coverages A and C, in addition to the named insured, is a spouse, if any, or "any person while using the automobile and any person or organization legally responsible for the use thereof" provided the use is with the permission of the named insured. Quite clearly the emphasis on the liability coverage, not only as written in the policy but as mandated by statute, was related to more than the nominal ownership (Insurance Law, § 167, subd. 2). (See, also, *Jones* v. *Georgia Cas. & Sur. Co.,* 89 Ga. App. 181; *Trinity Universal Ins. Co.* v. *De Martini,* 118 S. W. 2d 901 [Tex.].)

The insurers further contend that they would not have issued a policy to this camp because of unfavorable hazards and experience. They cite section 149 of the Insurance Law to the effect that a misrepresentation by the named insured voids the policy if the insurer's knowledge of the true facts would have led to a refusal to write coverage. In support of this contention they rely upon: (1) the binder form wherein the handwritten notation appears, "Used only for pleasure. No business use, no passengers carried for school;" (2) the fact that Ignatz signed a statement that from the time he purchased the car he used it in assisting in the operation of the school and camp; (3) the fact that he transferred the registration to the camp because he used it principally for the camp; and (4) the fact that David, his brother, was on the business of the camp at the time of the accident.

The short answer to this contention is that we find no defense of misrepresentation or fraud pleaded. Consequently, the contention is not now open to them (*Lampke* v. *Metropolitan Life Ins. Co.*, 279 N. Y. 157; *Black Co.* v. *London Guar. & Acc. Co.*, 190 App. Div. 218, affd. 232 N. Y. 535). If the point were open for our consideration, however, we note that with respect to the materiality of Ignatz' use of the car for the business of the school, both the original policy and the renewal policy show his occupation to be a teacher at the Yeshiva Tora Vejire and that Ignatz resided at 216 Division Avenue, Brooklyn. The binder agreement and the original policy contain the Yeshiva's address as 550 Bedford Avenue, Brooklyn. Both policies provide that the coverage thereunder was for "Pleasure and Business" which is defined identically in both policies as "personal, pleasure, family and business use." Accordingly, the use of this vehicle by Ignatz for the purpose of driving himself and others on the business incidental to his duties as a teacher for the Yeshiva, was within the contemplation of the parties. At this juncture we should not attempt to determine the nuances between pleasure, business or commercial use. The point is that if a pleasure use alone were intended, the policy should have so provided.

In view of the position we have taken it becomes unnecessary to consider the question of whether or not the insurers waived any right to avoid this policy by demanding and receiving an "earned premium" subsequent to learning of the transfer of ownership herein. We note in passing, however, that it has been held that after a loss the insurer's demand and acceptance of a premium with knowledge of the breach of the policy conditions, constitutes a waiver of the breach which estops it from asserting the breach as a defense (cf. *Bible* v. *John Hancock Mut. Life Ins. Co.*, 256 N. Y. 458; *Matter of Lipschitz* v. *Hotel Charles*, 226 App. Div. 839, 840, affd. 252 N. Y. 518). It has also been held that to permit an insurer to receive payments for a risk which the insurer thereafter claims it did not assume is a fraud upon the insured (*Lampke* v. *Metropolitan Life Ins. Co.*, 279 N. Y. 157, 165, *supra*).

Accordingly, the judgment should be reversed on the law and the facts, with costs to plaintiffs; and judgment should be directed, with costs, in favor of plaintiffs, declaring: (1) that under the policy here involved plaintiffs are insured against liability arising from the accident which occurred on August 6, 1956; (2) that defendants are required to undertake the defense of any actions against plaintiffs seeking to enforce their liability for damages or injuries sustained in such accident; and (3) that,

to the extent of the limits of such policy, the defendants are required to pay any judgments which may be rendered against plaintiffs, or either of them, in such actions.

Findings of fact insofar as they may be inconsistent herewith (31 Misc 2d 116) are reversed, and new findings are made as herein indicated.

UGHETTA, J. (dissenting). I dissent and vote to affirm the judgment.

On July 8, 1955, plaintiff Ignatz Tyrnauer purchased a 1953 station wagon and, through his broker Rosenfeld, caused it to be insured by defendants. In a binder, also used for rating classification, Ignatz, described as a teacher, was held out as using the car only for pleasure, with "No business use, no passengers carried for school." The rate was based on a class 1A risk. Ignatz was named in the policy as insured and as sole owner. The policy provides that it applies only if the automobile is owned, maintained *and* used for the purposes stated in the declarations, and that assignment of interest under the policy shall not bind the company until its consent is indorsed thereon.

In January, 1956, without notice to the insurers, Ignatz transferred record ownership to a corporation conducting a children's camp. He did this by an instrument, to be presented by the new owner in conjunction with an application for license plates, in which instrument Ignatz stated that he was the owner "and have disposed of the vehicle as shown above." In 1956 the car was registered in the name of the corporation. Had the insurers known of the change of ownership to a corporation operating a camp, they would have refused to change the policy so as to insure the new owner. The insurers were entitled to decide for themselves the question of coverage, in the light of the different ownership.

When Ignatz disposed of his car to the corporation, his insurance was at an end. Coverage arising out of ownership, maintenance or use of a described automobile ceases with the transfer of the ownership of the described automobile unless notice has been given to the insurer and the insurer consents to extension of the coverage (*Phoenix Ins. Co.* v. *Guthiel,* 2 N Y 2d 584, 589).

The holding in *Abrams* v. *Maryland Cas. Co.* (300 N. Y. 80, 85) to the effect that the insurer remained liable despite transfer of title, though based on the express ground that under the terms of the policy the former owner retained an insurable interest, now seems to be distinguished on the facts, i.e. that the former owner continued to use the truck in its business (*Phoenix Ins. Co.* v. *Guthiel, supra,* p. 590; *Switzer* v. *Merchants Mut. Cas. Co.,* 2 N Y 2d 575, 584).

The policy in question here admits of no interpretation other than that, in conformity with the authority cited in the *Phoenix Ins. Co.* case (*supra*), the insurance terminated upon change of ownership without consent to extension by the insurers. Were it otherwise, the insured would be at the mercy of a former owner with respect to testimony, constituting a question of fact, of continuance of maintenance and intention despite disposal of the car. At any rate, there is no question here, as under *Abrams* (*supra*), of a continuance of an original and insured commercial use.

When the accident occurred on August 6, 1956, while still another individual, plaintiff David Tyrnauer, was operating the car, it was no longer insured by defendants.

We are not concerned with whether, despite disposal, Ignatz remained liable under a definition of the term " owner " as used in section 388 of the Vehicle and Traffic Law. We are concerned with the terms and interpretation of the policy, and not with the terms and interpretation of the statute (*Lavine* v. *Indemnity Ins. Co. of North America*, 260 N. Y. 399; *City of Albany* v. *Standard Acc. Ins. Co.*, 7 N Y 2d 422, 430; *Mason* v. *Allstate Ins. Co.*, 12 A D 2d 138).

The meaning of the policy is clear.

Nor did the insurers waive the termination of the renewal policy and agree to abide by its terms as if the accident were within the coverage. Cancellation was prompt upon notice to insurers of the accident; at no time did insurers waive. Tender of the entire premium was made. When, months after the accident, a representative of Ignatz sought to amend the terms of the policy so as to have the accident covered, the application was promptly refused.

Nolan, P. J., Christ and Pette, JJ., concur with Brennan, J.; Ughetta, J., dissents in opinion.

Judgment reversed on the law and the facts, with costs to plaintiffs; and judgment directed, with costs, in favor of plaintiffs, declaring: (1) that under said policy plaintiffs are insured against liability arising from said accident; (2) that defendants are required to undertake the defense of any actions against plaintiffs seeking to enforce their liability for damages or injuries sustained in such accident; and (3) that, to the extent of the limits of such policy, the defendants are required to pay any judgments which may be rendered against plaintiffs, or either of them, in such actions.

Findings of fact insofar as they may be inconsistent with the majority opinion herein, are reversed, and new findings are made as there indicated.