No. 20,105.

AMERICAN SERVICE MUTUAL INSURANCE COMPANY v. ABOLGHASSEM PARVIZ, ET AL.

(386 P. [2d] 982)

Decided November 18, 1963.

Mr. H. MYERS BUMGARDNER, Mr. CHARLES D. PIERCE, for plaintiff in error.

Messrs. LINDNER, ARKIN and DAVIS, for defendant in error Parviz;

Messrs. PHELPS, FONDA and HAYS, for defendants in error Weston and Pissi.

*In Department.*

Opinion by Mr. Justice Day.

We will refer to the individual parties by name and the plaintiff in error as the Company.

This is a damage action instituted by Weston and Rissi to recover for the wrongful death of their respective wives in a two-car headon collision three miles north of Walsenburg, Colorado. Parviz was the owner of a car being driven by one Soleimani, who was also killed in the collision. Parviz was the defendant and third party plaintiff in the trial court. The Company was third party defendant in an action by Parviz to compel it to provide counsel for defense of the suit and to pay, to the limits of a liability insurance policy held by Parviz, any judgment which might be entered against him.

Trial was to the court and resulted in a finding that the negligence of the driver of Parviz' car was the sole proximate cause of the accident. Judgment on the third party action was entered against the Company in favor of Parviz in the amount of $10,000.00, the dollar limit of the policy. The latter judgment is the one to which writ of error is directed. Parviz has not assigned any cross error to the two judgments against him entered in favor of Weston and Rissi. They were made defendants in error in this court because of their financial interest in the issues between the Company and Parviz.

Error is assigned to two findings of the trial court: 1. That the driver of the car, Soleimani, was the joint owner; 2. that the Company "in issuing the insurance policy, made said policy subject to the provisions of the Colorado Motor Vehicle Safety Responsibility Act * * *."

There was no question that the negligence of Soleimani was imputed to Parviz. Weston and Rissi, with the help of Parviz, attempted to establish joint ownership in Soleimani because of the following limitation of liability in the policy:

"With respect to the insurance for bodily injury liabil-

ity and for property damage liability and for medical payments this policy provides coverage only when the *vehicle is being actually physically driven* by the *named insured* or a member of his immediate family. Coverage is extended 'While being driven on a Military Reservation Only' to any person legally responsible for the use thereof, provided the actual use of the automobile is with the insured's permission. The words, 'immediate family' means the spouse, the minor children of named insured or spouse, the parents of either, brothers or sisters of either, while actually residing in the household of the named insured." (Emphasis supplied.)

█ Soleimani, of course, was not the named insured nor was he a member of the immediate family. It was the theory of those attempting to establish joint ownership that by such fact Soleimani as a joint owner would be an *"implied insured,"* even though not named in the policy. We need not determine whether a joint owner is automatically insured by a limitation such as contained in the subject policy or whether or not he is actually named as an insured, for the reason that the finding by the court that the deceased Soleimani jointly owned the automobile is not supported by any competent evidence in the record. Parviz testified that his companion paid half of the purchase price of the car. This falls short of establishing ownership. It is admitted that the company had no notice of such contention; record title was solely in Parviz; at the time of the purchase Soleimani had no driver's license, and the application for insurance did not disclose any person's interest other than Parviz. The policy contained the usual proviso:

"The above statements are warranties and not representations, and I declare that *I have withheld no information whatsoever relative thereto.* I agree that this proposal shall be the express basis of the Contract between the Company and me, and further agree that if any of the above answers to the questions propounded

are untrue, same shall constitute an automatic breach of this Contract, to the acknowledged detriment of the Company, and the Company shall be fully released from any liability thereunder." (Emphasis supplied.)

█ It has generally been held that representations as to the identity of the named insured and the precise nature of his interests relate to a subject *material* to the carrier's risk, and thus entitle the latter to disclaim liability if full disclosures are not made. 33 A.L.R. (2d) 948.

█ The theory upon which ownership is deemed material goes to the heart of the insurance operation. Acceptance of a mathematically categorized risk in return for a computed premium commensurate with that risk is the basis upon which such contracts are written. In the instance of automobile insurance, moreover, there are situations in which the particular risk, because of general age grouping, personal accident records, or otherwise, is considered too high to justify coverage at any cost; in such a case the insurer may refuse to enter into a contract with the applicant in question. *Didlake v. Standard Insurance Co.,* 195 F. (2d) 247, 33 A.L.R. (2d) 941. The Company might have declined coverage in this case had full disclosure of facts as now claimed been made. Also the premium might have varied considerably. For these reasons the court cannot alter the contract to include other and different coverage.

At most the evidence disclosed a share-expense arrangement, and the court also found the parties involved in a "joint venture" [sic].

An express endorsement on the policy states:

"In consideration for the premium for which this policy is written, the named insured, by acceptance of this policy, agrees that:

"1. No coverage of any kind is extended under this policy in respect to any accident occurring while the vehicle hereunder insured is used (1) for any commercial purpose (2) 'share the expense purpose.' "

On the second point the court was also in error. It cannot be determined from the terse statement in the "Conclusions of Law" whether judgment of liability was imposed upon the company by reason of the court's interpretation of the provisions of the policy or by reason of the interpretation of the statutes comprising the "Safety Responsibility Law," C.R.S. '53, 13-7-1, et seq. But liability cannot be found on either ground.

The only statement in the record on this point made by the court is: "VII. That the Third Party Defendant in issuing the Insurance policy in the name of Captain Parviz, made said policy subject to the provisions of the Colorado Motor Vehicle Safety Responsibility Act to the extent of the limits of liability covered by said policy."

The policy does not warrant the conclusion of the trial court as to the Company's liability. The so-called omnibus clause making the policy subject to the laws of other states is limited by its terms and is as follows:

"When this policy is *certified* as proof of financial responsibility *for the future* under the provisions of any motor vehicle financial responsibility law such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph." (Emphasis supplied.)

■ There is no ambiguity in the language of the policy. To give effect to the requirement for certification and to the words "for the future" we conclude that the Company has agreed to bind itself when it has *certified* its policy in a particular state that the insured will be covered for *future* liability. It is admitted the Company did not so certify the policy in Colorado.

A reading of the statutes touching on the matter of proof of liability and certification (C.R.S. '53, 13-7, 16, 17, 18, 21 and 22) also indicates that the certificate be filed by the Company and that the permit or license to drive in Colorado, or the lifting of a suspended license be in reliance upon the certification that the driver is covered for future liability. The pertinent statutes provide as follows:

"13-7-17. Amount of proof required.—Proof of financial responsibility shall mean proof of ability to respond in damages for any *liability thereafter incurred* resulting from the ownership, maintenance, use, or operation of a motor vehicle for or on account of bodily injury to or death of any one person in the amount of five thousand dollars, and subject to said limit for any one person injured or killed, in the amount of ten thousand dollars for or on account of bodily injury to or death of two or more persons in any one accident, and for damage to property in the amount of one thousand dollars resulting from any one accident. Such proof in said amounts shall be furnished for each motor vehicle registered by such person." (Emphasis supplied.)

"13-7-18. Alternate methods of giving proof—Proof of financial responsibility when *required under this article* may be given by the following alternate methods: either by proof that a policy or policies of liability insurance *have been obtained* and are in full force and effect or that a bond has been duly executed or that deposit has been made of money or securities as provided in section 13-7-28." (Emphasis supplied.)

"13-7-21. Certificate furnished by nonresident.— (1) The nonresident owner of a foreign vehicle may give proof of financial responsibility by filing with the director a *written certificate or certificates of an insurance carrier* authorized to transact business in the state in which the motor vehicle or motor vehicles described in such certificate is registered or if such nonresident does not own a motor vehicle then in the state in which the

insured resides and otherwise conforming to the provisions of this article and the *director shall accept* the same upon condition that said insurance carrier complies with the following provisions of this section:

(a) Said insurance carrier *shall execute a power of attorney* authorizing the director to accept service on its behalf of notice or process in any action arising out of a motor vehicle accident in this state.

(b) Said insurance carrier *shall duly adopt a resolution* which shall be binding upon it, declaring that its policies shall be deemed to be varied to comply with the law of this state relating to the terms of motor vehicle liability policies issued herein.

(c) Said insurance *carrier shall also agree* to accept as final and binding any final judgment of any court of competent jurisdiction in this state duly rendered in any action arising out of a motor vehicle accident.

(2) If any foreign insurance carrier which *has qualified* to furnish proof of financial responsibility defaults in any said undertakings or agreements, the director shall not thereafter accept any certificate of said carrier, whether theretofore filed or thereafter tendered, as proof of financial rsponsibility so long as such default continues." (Emphasis supplied.)

There was no written certificate filed by the Company, no "acceptance by the director" and no imposition of the conditions contained in 13-7-21, all emphasized by italics in the quoted portions of the statute.

■ By the laws of Colorado, therefore, it is not a condition precedent to the right to drive upon the highways of the state that one have insurance. Parviz had a few hours prior to the accident entered the state from New Mexico and had an Alabama driver's license. He filed a report of the accident with the Motor Vehicle Department pursuant to a section of the statute, C.R.S. '53, 13-7-6, which we in *People v. Nothaus,* 147 Colo. 210, 363 P. (2d) 180, declared unconstitutional. In the report he said that he had a policy of insurance issued to him by the

Company and listed its name and Alabama address. The Company filed its statement with the Department as follows:

"No coverage effective while vehicle driven by anyone other than the named insured or a member of his immediate family residing in his household. Coverage has been denied."

■ The interpretation of C.R.S. '53, 13-7-19, was before this court in *Safeco v. Gonacha,* 142 Colo. 170, 350 P. (2d) 189. There it was said the statute:

"\* \* \* applies to a driver having prior accidents, who has manifested financial irresponsibility and submits to the Director a policy 'as proof' of *future responsibility* in order that he may continue to operate an automobile. Substantially identical enactments have been construed to apply only to 'mandatory policies' as distinguished from 'voluntary policies.' This is manifest from a careful reading of the 'Colorado Financial Responsibility Law.'" (See cases cited therein.)

The Company in this case not being authorized to do business in this state does not come within 13-7-9.

Assuming for the purpose of argument that the report by Parviz and his declaration of having insurance would constitute proof of financial responsibility, it would only apply to the future. The rationale of the Safeco case applies in like manner to a non-resident owner of a foreign vehicle owning a policy issued in another state. To hold otherwise would make the statute non-uniform by affording different treatment to a resident of this state having a policy issued by a company subject to the laws of this state. The state of Illinois has a "Safety Responsibility Act" similar to that of Colorado. It was interpreted in *McCann v. Continental Casualty Co.,* 6 Ill. App. (2d) 527, 128 N.E. (2d) 624. The court noted that Illinois (and this is also true in Colorado) has no general statutory provision making insurance compulsory in all cases. In interpreting a provision that requires "omnibus coverage" in an insurance policy so as to cover those

driving with permission (similar to secs. 13-7-22 and 23) when the policy is used as proof of compliance with the financial responsibility laws, the Illinois court held that the owner of the policy must by prior accident or otherwise be brought within the scope of the statute before its provisions can apply.

Though not precisely on the point, this court in the Nothaus case indicated that any different interpretation would amount to legislation for a private purpose, namely "payment of a private obligation" already incurred rather than providing for future protection of the public, and would be unconstitutional.

Parviz, Weston and Rissi also have attempted to read into the policy the provisions required by C.R.S. '53, 13-7-22 and 13-7-23, and cite *Traders Ins. Co. v. Pioneer Mutual Comp. Co.*, 127 Colo. 516, 258 P. (2d) 776. These sections apply only to policies issued by an insurance carrier authorized to transact business in this state and to insurance policies issued in this state by companies organized under the insurance laws of Colorado. The Company is not subject to either section of the statute. By the terms of the policy it agreed to have read into its contracts such provisions of a state statute and to make them a part of the policy only when it *certified* the policy *for future* responsibility.

The finding of the court against the Company not being supported either by the record or the Financial Responsibility Act is reversed.

Mr. Justice Moore and Mr. Justice Sutton concur.