*354 Opinion by
Mr. Justice Lee.
Plaintiffs in error (plaintiffs in the trial court) brought an action for wrongful death of their parents against one Charles R. Goudy, defendant in the trial court. The deaths occurred as a result of injuries received in an automobile collision. Judgments were entered by default against Goudy. Plaintiffs, contending that Goudy was covered by a public liability insurance policy issued by State Farm Mutual Automobile Insurance Company, caused a garnishee summons to be served on State Farm which answered, denying such coverage. Plaintiffs traversed the answers to the garnishee summons and a trial to the court was held on the issues raised by the traverse, resulting in a judgment in favor of State Farm.
This writ of error is directed only to the judgment in favor of State Farm and does not relate to the principal judgments in favor of plaintiffs against Goudy.
Plaintiffs contend the court committed reversible error: first, in denying them a trial by jury of the fact issues raised by the traverse of the answers to the garnishee summons; and, second, in finding and concluding that Goudy was not covered by a public liability insurance policy issued by State Farm. We disagree and therefore affirm the judgment of the trial court.
I.
The procedural question of whether there is a right to a trial by jury in garnishment proceedings has not heretofore been determined in this state. It is generally recognized that remedies of attachment and garnishment were unknown at common law and exist only by reason of statute or rules of procedure enacted pursuant to statutory authority. Black v. Plumb, 94 Colo. 318, 29 P.2d 708; State v. Elkins, 84 Colo. 409, 270 P. 875; Troy L. & M. Co. v. Denver, 11 Colo. App. 368, 53 P. 256. The scope of the remedy being limited, we have examined our statutes and rules to determine whether the remedy encompasses the trial of disputed fact issues by a jury. *355 No statute has been brought to our attention which confers such a right to or requires a jury trial in garnishment proceedings. R.C.P. Colo. 103, recently readopted as C.R.C.P. 103, is silent on the subject. Nor is there any express provision relating to this matter in R.C.P. Colo. 38, readopted as C.R.C.P. 38, which relates to the right of jury trial.
In considering the nature of the remedy, we find the authorities are far from harmonious on whether the remedy of garnishment more nearly resembles a proceeding at law or one in equity. See 19 A.L.R. 3d 1393 for a collation of decisions discussing various theories adopted by the courts throughout the country. As we view it, the proceedings more properly fall under the equity arm of the court, the purpose being to summarily reach ordinarily nonleviable evidences of debt, to prevent the loss or dissipation of such assets, to determine the ownership of such funds and to provide for the equitable distribution thereof. Bassi v. Bassi, 165 Minn. 100, 205 N.W. 947; Weibler v. Ford, 61 Minn. 398, 63 N.W. 1075; New Mexico Nat. Bank v. Brooks, 9 N.M. 113, 49 P. 947; Huntington v. Bishop, 5 Vt. 186; Delaney v. Hartwig, 91 Wis. 412, 64 N.W. 1035; LaCrosse Nat. Bank v. Wilson, 74 Wis. 391, 43 N.W. 153; Gaffney v. Megrath, 23 Wash. 476, 63 P. 520. It has long been recognized in Colorado that claims sounding in equity are triable by the court and not by a jury, subject to the right of the court to impanel an advisory jury under C.R.C.P. 39(c). Miller v. District Court, 154 Colo. 125, 388 P.2d 763, and cases cited therein. Accordingly, we conclude it was not error for the court to determine the fact issues in the garnishment proceedings rather than to submit them to a jury as demanded by the plaintiffs.
II.
Discussion of the second contention of reversible error requires a preliminary consideration of a rather involved factual situation.
Mrs. Lavelle Roberts owned two automobiles which *356 were insured under a liability policy issued by State Farm. This particular policy is not involved in this litigation but is of significance to show that she had paid a membership fee in the State Farm Mutual Automobile Insurance Company and was entitled by her membership to the issuance of additional insurance, on other vehicles at a reduced rate. " •
Mrs. Roberts, who operated a boardinghouse, had employed Mr. Goudy as a handyman. Goudy was desirous of buying a car for his personal use. On April 4, 1963, he and Mr. and Mrs. Roberts went shopping for a used automobile in Denver and eventually Goudy chose a 1955 Mercury sedan. Since Goudy was without sufficient funds to pay the purchase price and without adequate credit, the seller required Mrs. Roberts to co-sign the note and chattel mortgage. This she agreed to do. Mrs. Roberts was presented with a blank form of note and chattel mortgage which she signed. Goudy did not sign these forms. Although the original purchase order was signed by Goudy, Mrs. Roberts’ name was inserted as the buyer (without her knowledge) and Goudy’s name was stricken from the office copy. To make it appear as though Goudy was the purchaser, a temporary registration certificate was issued in the names of both Goudy and Mrs. Roberts-. Mrs. Roberts did not intend to purchase the auto; she only meant to co-sign the obligation, lending her credit to Goudy. This process of dealing was described by the salesman who testified in the case as “switching paper, a type of fast tract” operation. It was necessary to do this to save the deal because of Goudy’s lack of credit..
The note and chattel mortgage were then sold to a bank which notified Mrs. Roberts that she had purchased the automobile and that payments were to be made to the bank. She learned that in addition to being the titleholder and sole obligor she had also purchased a credit life policy and an insurance liability policy (not with State Farm). Justifiably upset with the treatment she had received, Mrs. Roberts immediately paid off the bank *357 and canceled the insurance policies. However, she took no steps against the automobile dealer to void the purchase transaction.
On April 23, 1963 Mrs. Roberts went to her State Farm agent with whom she had previously done business and ádvised him of the details of the transaction and of the need for liability insurance on the car. Mr. Goudy was not present. An application for insurance was prepared and signed by Mrs. Roberts, which listed her as the applicant and the sole owner of the vehicle and Mr. Goudy as the principal driver. Mrs. Roberts testified:
“It was asked of me in whose name the policy should be written up, whether it should be in both our names or not, and I made the statement it looked like I had [the] financial responsibility on the car and it might just as well be in my name.”
Mrs. Roberts also advised the agent that when Goudy paid for the car it would be his car. Goudy had made arrangements to pay Mrs. Roberts by regular deductions from his wages. Mrs. Roberts further testified that it was brought to her attention that because of her other insurance with State Farm the insurance premium on the new policy would be smaller than if Goudy were also a named insured. The total premium was $33.70. Had the name of Goudy appeared on the policy the total cost, including the additional premium and Goudy’s mutual membership fee, would have been $50.07. The application contains the following representation:
“The undersigned hereby applies for the insurance indicated and represents the statements on both sides of this application are correct and that he is the sole owner of the described automobile except with respect to encumbrances shown or other interests in the remarks section of this application.”
State Farm then issued a policy with limits of liability at $25,000 for each person and $50,000 for each accident. The policy was in the sole name of Mrs. Roberts-. *358 The policy contained the usual provision concerning assignments:
“No interest in this policy is assignable unless the company’s consent is endorsed hereon.”
Thereafter, Mrs. Roberts received the certificate of title to the automobile, which was in her sole name, and on May 14, 1963, assigned it to Goudy. Neither Goudy nor Mrs. Roberts advised State Farm of the title transfer and no attempt was made to assign the insurance policy from Mrs. Roberts to Mr. Goudy.
The tragic accident occurred on June 8, 1963. State Farm, on learning of the transfer of the title, denied liability. The policy was cancelled and the unearned premium was returned to Mrs. Roberts.
At the conclusion of plaintiffs’ case, the trial court granted State Farm’s motion to dismiss, finding that Goudy was not protected by the insurance policy. Under the facts of this case, which were essentially undisputed in all material details, we find the ruling of dismissal by the court to be correct.
In order for plaintiffs to be entitled to recover from State Farm, they must show that Goudy was an insured under the terms of the policy. General Corp. v. Mitchell, 128 Colo. 11, 259 P.2d 862. As pointed out before, Goudy was not a named insured, nor was he named as an owner of the automobile in question. It is quite clear that as long as Mrs. Roberts was the owner of the vehicle and Goudy was driving with her permission he would have been covered by the terms of the so-called “omnibus clause” of the policy. However, the general rule is clear that liability coverage, which is born of ownership, maintenance and use of a stated automobile, terminates upon a change of ownership unless the insurer approves the extension of coverage. United Fire & Cas. Co. v. Perez, 161 Colo. 31, 419 P.2d 663; Trynauer v. Travelers Insurance Co., 15 App. Div. 2d 293, 223 N.Y.S.2d 151. It is also generally held that policies of liability or indemnity insurance are personal contracts between the *359 policyholder and the insurer, and as such do not attach to or run with the property, the use, operation or maintenance of which may give rise to liability, and a transfer of such property to a third person does not carry with it the contract of insurance without the consent of the insurer. 7 Appleman, Insurance Law and Practice, § 4269; 43 Am. Jur. 2d Insurance §§ 194 and 687. It is significant here that no effort whatsoever was made to transfer the policy of insurance from Mrs. Roberts to Goudy, or to obtain consent to an assignment of the policy, or to give notice to State Farm of the transfer of the automobile.
Plaintiffs strenuously urge that coverage here should be extended to Goudy, principally for the reason that the risk insured did not change by reason of the transfer of title to the automobile. It is argued that since Goudy was listed as the principal driver of the vehicle, the mere transfer of title did not alter the risk insured against. At first blush, such might appear valid. However, this position overlooks the elements of legal control and responsibility which arise out of ownership. While Mrs. Roberts was the owner, she could at any time have terminated Goudy’s permission to use the auto. After the transfer of title, Mrs. Roberts’ control ceased and Goudy became the legal owner with full right of control to permit whomever he chose to drive the vehicle. The right of control is basic in determining the risk insured. The rationale is set forth in American Co. v. Parviz, 153 Colo. 490, 386 P.2d 982, where this Court stated:
“The theory upon which ownership is deemed material goes to the heart of the insurance operation. Acceptance of a mathematically categorized risk in return for a computed premium commensurate with that risk is the basis upon which such contracts are written. In the instance of automobile insurance, moreover, there are situations in which the particular risk, because of general age grouping, personal accident records, or otherwise, is considered too high to justify coverage at any cost; *360 in such a case the insurer may refuse to enter into a contract with the applicant in question. * * *”
In this connection we point out that Mrs. Roberts chose to have the policy issued in her name alone as the insured and the premium charged her was accordingly discounted by reason of her membership in the mutual company and the other insurance then in effect.
Plaintiffs cite the case of Trynauer v. Travelers Insurance Co., supra, in support of their position. The facts are distinguishable from the instant case. There, the owner transferred title of the vehicle to a charitable corporation of which he was vice president. However, he retained exclusive control and possession of the vehicle, had the sole use thereof and paid individually all maintenance, insurance and operating expenses arising therefrom.
We have considered all of the theories advanced by plaintiffs upon which they predicate liability of State Farm, but find them to be without factual support in the record.
The judgment is affirmed.
Mr. Chief Justice McWilliams, Mr. Justice Hodges and Mr. Justice Kelley concur.