ARGONAUT SOUTHWEST
INSURANCE COMPANY

v.

AMERICAN HOME ASSURANCE COMPANY, Travelers Insurance Company.

AMERICAN HOME ASSURANCE
COMPANY

v.

ARGONAUT SOUTHWEST INSURANCE
COMPANY and Zurich
Insurance Company.

TRAVELERS INSURANCE COMPANY

v.

ARGONAUT SOUTHWEST INSURANCE
COMPANY and Zurich
Insurance Company.

No. 3–76–0220–C.

United States District Court,
N. D. Texas,
Dallas Division.

Jan. 24, 1980.

L. W. Anderson and C. A. Searcy Miller, Dallas, Tex., for Argonaut and Zurich.

Lancaster Smith, Dallas, Tex., for American Home.

William T. Hankinson, Dallas, Tex., for Travelers.

## MEMORANDUM OPINION

WILLIAM M. TAYLOR, Jr., District Judge.

This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201, brought by Argonaut Southwest Insurance Company ("Argonaut") against American Home Assurance Company ("American Home") and Travelers Insurance Company ("Travelers"). Argonaut seeks to establish that neither it nor Zurich Insurance Company ("Zurich") provided liability insurance coverage for an accident involving a machine manufactured by the Beardsley & Piper Division of the Pettibone Corporation. This Court has jurisdiction of this cause by reason of the diversity of citizenship between the parties, and the amount in controversy exceeds $10,000, exclusive of interest and costs. 28 U.S.C. § 1332.

*Background*

The Pettibone Corporation engages in the manufacture of heavy equipment. The Beardsley & Piper Division is a division of the Pettibone Corporation and is not a separate legal entity. Beardsley and Piper was originally a partnership business that manufactured heavy machinery. For many years Beardsley & Piper carried their insurance coverage through a particular agent in Chicago, Illinois. At the time Pettibone Corporation acquired the Beardsley & Piper partnership there was no change in the actual operation of Beardsley & Piper. Beardsley & Piper did not change their location or their mode of operation, and Beardsley & Piper continued to maintain their long standing relationship with their insurance agent who in turn continued to write separate policies of insurance on Beardsley & Piper. This course of business dealing continued in effect up through March 2, 1973, the time of the policies in question. Beardsley & Piper liability coverage was written by Travelers (policy limits $100,000) and American Home (excess coverage $5,000,000) while the bulk of Pettibone Corporation liability coverage was written by Argonaut (policy limits $100,000) and Zurich (excess coverage $5,000,000).

The Beardsley & Piper Division of Pettibone Corporation designed and manufactured a large industrial pipe grinder and sold it to the Cameron Iron Works in Houston, Texas. This machine was used by Cameron Iron Works to cut and grind pipe to meet customer specifications. While Benjamin Kutra, an employee of Cameron

Iron Works, was assisting in the operation of the machine on March 2, 1973, his right arm was dragged into the machine at the "nip point." As a result of the accident, Mr. Kutra's right arm and portions of his right shoulder, chest and rib cage were removed, and he suffered permanent and irreversible brain damage.

Mr. Kutra, by and through his wife, brought suit in Harris County, Texas, against the Pettibone Corporation. Defense of the suit was tendered to Argonaut and Argonaut initially participated in the defense of the lawsuit. Subsequently Beardsley & Piper Division was brought in as a Defendant and at that point Travelers and American Home became interested in and participated in the defense of the *Kutra* lawsuit. Since the evidence developed during discovery in the *Kutra* lawsuit indicated that liability lay with Beardsley & Piper Division for which there was separate insurance coverage, Travelers took the "managing oars" of the defense. Subsequently, Gordon Holloway, representing Travelers, was the lead counsel of record.

The *Kutra* lawsuit proceeded to trial, and during the trial Mike Connelly, hired by Argonaut, represented Pettibone and Argonaut. After final arguments in the case but before the jury returned a verdict, Mr. Kutra and Travelers and American Home agreed to a compromise settlement. Travelers and American Home paid the sum of $1,657,500 in settlement to the plaintiff Kutra. Travelers paid $100,000, its policy limits, in settlement and American Home paid $1,557,500 in settlement. Argonaut and Zurich declined to contribute any amount toward settlement of the *Kutra* lawsuit.

The evidence developed during the *Kutra* trial clearly indicates that Mr. Kutra was severely injured and was undoubtedly permanently disabled from ever working again and from functioning as a normal person. The evidence would certainly support a verdict and judgment for the amount for which the case was ultimately settled.

The evidence shows that the machine in question was designed and manufactured totally through Beardsley & Piper Division

and that employees of no other division of the Pettibone Corporation had dealings with that design or manufacture. Mr. Robert Duty, a safety engineer for Pettibone, testified by deposition that he had gone to the Beardsley & Piper Plant in Chicago for purposes of making a noise level test on the machine. At that time when he learned that the machine was going to Cameron Iron Works he expressed some interest in the equipment, since he had interviewed with Cameron Iron Works before going to work with the Pettibone Corporation. He made inquiries to one of the Beardsley & Piper personnel concerning the type of guarding mechanism that would be used around the in-running nip point on the machine and was advised that some type of fence or barrier was going to be erected at Cameron Iron Works when the machine was installed, and that the nip point would be guarded by location since no one was supposed to be measuring the nip point while the machine was in actual operation anyway. No evidence of this fact was brought out in the trial of the *Kutra* case, but a stipulation as to this fact was entered into by the plaintiff Kutra, Travelers and American Home, over the objection of Mike Connelly, attorney for Argonaut and Pettibone Corporation. This stipulation was made after the close of the evidence out of the presence of the jury.

Travelers and American Home made it clear to Argonaut that they would seek to require Argonaut (and any excess coverage carrier) to reimburse them for a portion of the sum paid in settling the *Kutra* lawsuit. As a result, Argonaut brought this declaratory judgment suit, and asks the Court to rule that the liability insurance coverage provided by Argonaut and Zurich to Pettibone excludes the Beardsley & Piper Division and the *Kutra* claim and lawsuit, and that Argonaut and Zurich are not required to make any contribution to Travelers or American Home for the settlement made in the *Kutra* lawsuit. After having considered the stipulated facts, written record and briefs of counsel, the Court is of the opinion that the liability insurance policies

issued by Argonaut and Zurich to the Pettibone Corporation did in fact exclude coverage of the Beardsley & Piper Division and the *Kutra* claim and lawsuit. For the reasons set out below, the Court concludes as a matter of law that Argonaut and Zurich are not required to make any contribution to Travelers or American Home for the settlement of the *Kutra* lawsuit.

*Conclusions of Law*

1. The policies of insurance issued by Argonaut and Zurich to Pettibone Corporation did not provide Pettibone coverage for damages growing out of a personal injury lawsuit based on an unreasonably dangerous machine manufactured by Beardsley & Piper Division of the Pettibone Corporation.

 As shown by the plain wording of Endorsement No. 1 to the Argonaut Policy and Endorsement No. 1 to the Zurich Policy, Argonaut and Zurich specifically excluded all Beardsley & Piper Division operations from all liability coverage they provided to the Pettibone Corporation.[1] The fact that the plaintiff Kutra first sued Pettibone alone, without naming the Beardsley & Piper Division, is not legally sufficient to impose liability under the Argonaut and Zurich policies. The machine was designed and manufactured by a division of Pettibone (i. e., Beardsley & Piper) whose operations were clearly excluded from coverage by Argonaut and Zurich, and the fact that that division is part of the larger corporation is insignificant. The language in both endorsements is clear and unambiguous, and it is well established under Texas law—by which this Court is *Erie*-bound—that the Court cannot rewrite a contract of insurance where the wording is plain and certain; it must enforce such a policy as written. The terms and provisions of an unambiguous policy cannot be enlarged or diminished by judicial construction. *Sutton Drilling Co. v. Universal Insurance Co.*, 335 F.2d 820 (5th Cir. 1964); *Bright v. New York Life Insurance Co.*, 546 S.W.2d 145 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n. r. e.); *General American Indemnity Co. v. Pepper*, 161 Tex. 263, 339 S.W.2d 660 (1960). Since clear and decisive language prevails over language of the instrument that is perhaps uncertain, *United States Fire Ins. Co. v. St. Louis B. & M. R. Co.*, 41 S.W.2d 118 (Tex.Civ.App.—Galveston 1931, rev'd oog), the Court would be rewriting the policies if it construed the language in parenthesis following "Baraga, Michigan operations only" as modifying the clear exclusion of Beardsley & Piper from coverage. Likewise since general provisions are controlled by special provisions, *Kuntz v. Spence*, 48 S.W.2d 413 (Tex.Civ.App.—Ft. Worth 1931, rev'd oog), the Court would be rewriting the policies if it construed the very general "vendor-broad form" endorsement, meant to cover entities other than Pettibone Corporation which sold Pettibone products, as modifying the specific exclusion of coverage for one of Pettibone's own divisions. This the Court cannot do.

 Moreover, even if the Court were to find that the wording of the insurance policies was ambiguous, the conclusion is inevitable based on the stipulated facts and the deposition testimony, that the policies of Argonaut and Zurich were intended, by Pettibone as well as by Argonaut and Zurich, to exclude all Beardsley & Piper Division operations. Beardsley & Piper, after its purchase by Pettibone, continued to have its insurance agent write separate policies of insurance on Beardsley & Piper Division, and the premiums paid by Pettibone, as

---

1. Endorsement No. 1 to the Argonaut Policy states:

 "ITEM 1 NAMED INSURED IS AMENDED TO READ:
 PETTIBONE CORPORATION AND/OR ANY SUBSIDIARY, OR OWNED OR CONTROLLED COMPANIES AS NOW OR HEREAFTER CONSTITUTED, EXCEPT AS FOLLOWS:
 BEARDSLEY & PIPER DIVISION
 PETTIBONE MICHIGAN CORPORATION
 BARAGA, MICHIGAN OPERATIONS ONLY
 (GENERAL LIABILITY COVERAGE IS EXCLUDED;
 PRODUCTS—COMPLETED OPERATIONS IS INCLUDED)"

 Endorsement No. 1 to the Zurich Policy states:
 "It is agreed that such insurance as is afforded by the policy does not apply to Beardsley & Piper Division of Pettibone Corporation."

well as the deposition testimony of Glenn Hodek (agent of March & McLennan who, during 1973, placed the insurance on Pettibone with Argonaut and Zurich) clearly shows that it was never the intention of Argonaut and Zurich to afford coverage to Beardsley & Piper Division.

It is elementary that a company must find out who the insured is in order that it may determine the risks and the premium it will charge for that risk. Therefore the designation of the insured is a very material part of the coverage decision. As stated in Appleman, Insurance Law and Practice, Section 2622:

"The proper designation of the insured is of some consequence. Insofar as individual policies are concerned, the identity of the insured is of importance so that the insurer can calculate the risks which it is incurring."

In *American Service Mut. Ins. Co. v. Parviz*, 153 Colo. 490, 386 P.2d 982 (1963), the Court used the analogy of automobile insurance, where the particular risk, general age grouping, and personal accident records of the named insured were important in assessing the risks and premium to be charged. The Court observed that the company might have declined coverage or else that the premium might have varied considerably had full disclosure been made. For these reasons the Court refused to alter the contract to include other and different coverage. Similarly, in *Occidental Fire and Cas. Co. v. Cook*, 92 Idaho 7, 435 P.2d 364 (1967), it was held that the insurer has the right to choose the persons with whom it will contract and that it should not retroactively be made to accept a relationship for which it did not knowingly bargain. Clearly in this case there was never an intent to insure any risk of Beardsley & Piper on the part of either the agent for Pettibone or of Argonaut or Zurich, and Pettibone never paid the premiums which would have been required for such coverage.

2. The policies of insurance issued by Argonaut and Zurich to Pettibone did not provide coverage under the circumstances of this case, regardless of any alleged negligence, strict liability, respondeat superior or agency theory that might be applied to the Pettibone Corporation.

■ As a matter of law, the coverage provided by the policies of insurance of Argonaut and Zurich cannot be expanded because a safety engineer from another division of the Pettibone Corporation saw the machine in question at the Beardsley & Piper Plant. The fact that an employee from Pettibone's central office or headquarters, visited the Beardsley & Piper site and saw the machine simply cannot negate the clear and unambiguous import of the exclusionary clause in the policies of insurance. *Bright v. New York Life Ins. Co.*, supra. In the Court's opinion, any coverage of the actions of a safety engineer or other employee from Pettibone *on* the Beardsley & Piper Plant premises and acting *in conjunction with* and *on behalf of* the Beardsley & Piper Division, would more properly be by Travelers and American Home, since they insured Beardsley & Piper Division. Coverage of their operations as a division of Pettibone was simply not the responsibility of Argonaut and Zurich.

*Conclusion*

The Court agrees with the plaintiff Argonaut that Travelers and American Home should accept that contractual responsibility and liability for the settlement of this case due to a defective product that resulted solely from the design and manufacture by Beardsley & Piper for which separate coverage was provided. Argonaut and Zurich will not be required to make any contribution whatsoever to Travelers or American Home for any settlement they made in the *Kutra* lawsuit. The settlement was purely the responsibility of Travelers and American Home due to the liability under their contracts of insurance with their insured, the Beardsley & Piper Division of the Pettibone Corporation.

Plaintiffs' attorneys are requested to prepare and submit appropriate form of judgment.