Florence Delphine BOEHM, et
al., Respondents,

v.

CITIZENS SECURITY MUTUAL
INSURANCE COMPANY,
Appellant.

No. C7–87–889.

Court of Appeals of Minnesota.

Oct. 27, 1987.

Review Denied Dec. 22, 1987.

Mark R. Kosieradzki, Raymond R. Peterson, Sieben, Grose, Von Holtum, & McCoy, Ltd., Minneapolis, for respondents.

George F. Vogel, Holst, Vogel, Erdmann & Vogel, Red Wing, for appellant.

Heard, considered and decided by HUSPENI, P.J., and FORSBERG and LESLIE, JJ.

## OPINION

FORSBERG, Judge.

Respondents Florence Delphine Boehm (or Delphine F. Boehm as she is referred to by the parties) and her husband Carl A. Boehm commenced this declaratory judgment action against appellant Citizens Security Mutual Insurance Company. This appeal is from the trial court's grant of summary judgment to the Boehms. We affirm.

## FACTS

On March 19, 1984, Delphine Boehm was involved in a three-car accident which occurred when Marian P. Bartz ran a stop sign and collided with Robert G. Pringle, who collided with Delphine Boehm. At that time, Delphine Boehm was an insured under an automobile insurance policy issued by appellant Citizens Security Mutual Insurance Company ("Citizens") with underinsured motorist coverage limits of $600,000.

The Bartzs (Marian and her husband Kenneth G. Bartz) owned a policy of insurance with Farmers Insurance Group with liability limits of $50,000. Pringle owned a policy with Home Insurance Company with liability limits of $500,000. The vehicle

driven by Pringle was owned by the Ford Motor Credit Company and was possibly insured under an additional umbrella policy.

Delphine Boehm was the only person injured in the accident. It is undisputed that her damages will exceed $50,000, the liability limits of the Bartzs' policy.

The Bartzs' insurance carrier offered to tender the policy limits of $50,000 to settle any claim. Pringle's insurance carrier offered $12,500 to settle.

The Boehms thereafter contacted their own insurer, Citizens, and advised it that it could protect its subrogation and contribution claims by tendering $62,500 pursuant to *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). Citizens thereafter tendered that amount, but requested that the Boehms execute a Loan Receipt Agreement which anticipated possible arbitration scenarios and established the set-offs which would be allowed in each case.

Wishing to accept the tendered $62,500 but not willing to sign the Loan Receipt Agreement, the Boehms commenced this declaratory judgment action, seeking the following declarations:

1. That [the Bartzs] are deemed underinsured motorists if the underinsured arbitration panel finds [the Boehms'] damages to exceed [$50,000].

2. That [the Boehms] be entitled to recover underinsured motorist benefits from Citizens * * * for any damages in excess of [$62,500] found by the underinsured motorist arbitration panel.

3. That Citizens * * * be able to pursue subrogation and contribution claims against [the insurance carriers for the Bartzs and Pringle] for satisfaction of monies paid, pursuant to the tender and any underinsured motorist benefits paid.

Citizens answered and entered a counterclaim seeking declarations similar to numbers 1 and 3 above, in addition to the following:

2. That if it is determined that the subject accident * * * [was] solely caused by [the Bartzs], then the amount of $50,000, the limits of the liability coverage afforded under the [Bartzs' insur-

ance policy] shall be deducted from said claim.

3. That if it is determined that the subject accident * * * resulted from the fault of [the Bartzs and Pringle], then the amount of $550,000.00, which are the limits of the liability coverage afforded by [the tortfeasors' two insurance carriers], shall be deducted from said claim.

4. That if it is determined that the subject accident * * * resulted from the fault [of all tortfeasors], then the amount of $550,000.00 plus any amount of umbrella liability coverage afforded [Pringle] shall be deducted from said amount.

* * * * * *

6. That the Court order [the Boehms] to execute the Loan Receipt Agreement * * * prior to accepting the $62,500.00 tendered by the Citizens * * * and prior to entering into the underinsured motorist arbitration.

Both parties moved for summary judgment. The trial court essentially granted the Boehms' motion and made the declarations sought by them in their complaint. In its attached memorandum, the trial court stated:

This Court finds that $62,500 shall be deducted from any award of underinsurance benefits. *This sum represents the lowest liability limits of any vehicle involved in the accident plus an amount already tendered by another insurer of an involved vehicle. Schmidt v. Clothier*, 338 N.W.2d 256 ([Minn.] 1983) supports this result. In that case, the Supreme Court held that an underinsurer is liable only for the damages suffered by the insured which are in excess of the liability limits of the Defendant. *Id.* at 261. However, the Court went on to hold that in the case of Plaintiff Paskoff the underinsurer was liable to pay the amount by which Paskoff's damages exceeded the lowest liability limits of any vehicle involved in the accident. It follows that in this case, the lowest liability limits of any available policy should be the threshold for deter-

mining the amount to be deducted from an award of underinsurance benefits.

(Emphasis added.)

This appeal followed entry of judgment.

## ISSUE

Did the trial court err in determining the proper amount of set-off when two or more potential tortfeasors are involved?

## ANALYSIS [1]

The parties agree that the Boehms may proceed with an underinsured motorist claim if their damages exceed $50,000, or the lowest liability limit of any one involved vehicle. The dispute arises over the amount of set-off to be allowed following underinsured motorist arbitration. Citizens seeks a deduction from the arbitration award of the combined liability limits of all parties found liable by the arbitrators.

A proper analysis of this case requires examination of *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983). *Schmidt* involved two consolidated cases brought against the same insurance company for underinsured motorist benefits. The case most similar to the facts here involved Paskoff. Paskoff was injured while a passenger in a car owned by the school district which collided with a car driven by Hoag. The school district's car was insured with liability limits of $300,000. Hoag's vehicle was insured with liability limits of $25,000. The school district offered to settle for $4,000, while Hoag offered $22,000.

Paskoff's underinsurance carrier refused to consent to the proposed settlement offers, arguing that settlement would impair its subrogation rights and that Paskoff was not entitled to underinsured motorist benefits until he exhausted the limits of both tortfeasors' liability policies. *Id.* at 259.

By court order, Paskoff was eventually allowed to negotiate the checks and release the tortfeasors. He brought suit when his insurer continued to refuse to process his underinsurance claim. On appeal, the supreme court concluded:

In Paskoff's case, the defendants have already been released. Safeco [his underinsurance carrier] could have protected its subrogation rights by substituting its check for the checks and releases tendered by the liability insurers. It could then have arbitrated the underinsurance claim with its insured [Paskoff] and thereafter have proceeded against the tortfeasor. It chose not to do this. Thus, we hold that Safeco must proceed to arbitration of Paskoff's underinsurance claim and is liable to pay the amount, if any, by which Paskoff's total damages exceed the liability limits of the underinsured defendant Hoag.

*Id.* at 263–64.

Although *Schmidt* did not expressly rule on the issue of the amount of set-off, we believe that it is instructional. The last sentence quoted above states that the liability limits of Hoag's policy must be deducted from Paskoff's total damages to determine what amount Safeco is liable to pay. The liability limits of Hoag's policy thus represents at least a portion of the set-off. Although *Schmidt* fails to expressly account for the $4,000 received by Paskoff from the school district, we believe that this amount would also have to be set-off against any amounts owed Paskoff in order to prevent him from receiving double recovery. The proper set-off in *Schmidt* thus would have equaled the liability limits of Hoag's policy plus the amount received by the other possible tortfeasor, the school district.

We conclude that the trial court in this case properly declared that the set-off

---

**1.** We initially note that the record here does not include a copy of the Boehms' insurance policy with Citizens. We therefore cannot ascertain whether the policy defines underinsured by reference only to the *other* vehicle, or by reference to *each* underinsured vehicle (which would prohibit claims for underinsured benefits unless the amount of damages attributable to the fault of each involved vehicle exceeded that driver's coverage). *See* Note, *No–Fault Insurance—Subrogation in Underinsured Motorist Settlement Proceedings,* 11 Wm. Mitchell L.Rev. 585, 596–97 (1985). Because the parties do not raise this as an issue, we assume that the Boehms' policy defined underinsured by reference only to the other vehicle. *See Johnson v. American Family Mutual Insurance,* 413 N.W.2d 172, 176 n. 1 (Minn.Ct.App.1987).

would equal $62,500 and properly characterized that amount as the lowest liability limits of any involved vehicle plus any other amounts offered in settlement. A determination as to which potential tortfeasor has the lowest liability limits is readily ascertainable and will consequently assist parties in making decisions during settlement.

Citizens insists that the procedure followed here will not adequately protect its subrogation and contribution rights. We disagree. "An underinsurer which promptly sends an underinsurance claim to arbitration and pays its insured will be protected from the effects of a settlement and release of the tortfeasor." *Schmidt*, 338 N.W.2d at 262. By following *Schmidt* and paying the Boehms the amounts offered in settlement, Citizens will be free to proceed against those found at fault and responsible for the Boehms' damages.

Citizens further argues that the payment by one of multiple tortfeasors of less than its policy limits creates a "gap" for which the injured party should be responsible. No gap is created from the Bartz settlement because the Bartzs' carrier offered to tender its liability limits. Admittedly, a gap of $985,000 theoretically exists from the Pringle settlement. Nevertheless, a close reading of *Schmidt* illustrates that the Boehms are only responsible for their failure to settle for the liability limits of one tortfeasor; they are not responsible for any gap created by their failure to settle for the combined liability limits of multiple tortfeasors. If an underinsurance carrier is allowed to deduct the combined liability limits of multiple tortfeasors, the burden would be on the injured party to pursue claims against tortfeasors. We believe that that burden is more properly placed on the insurer.

## DECISION

The trial court's grant of summary judgment is affirmed.