Marvin E. TRAVER, et al.,
Respondents,

v.

FARM BUREAU MUTUAL
INSURANCE COMPANY,
Appellant.

No. CX–87–1065.

Court of Appeals of Minnesota.

Jan. 26, 1988.

Review Denied April 15, 1988.

Elton A. Kuderer, Thomas A. Harder, Erickson, Zierke, Kuderer, Myster, Madsen & Wollschlager, P.A., Fairmont, for respondents.

Robert M. Halvorson, Gislason, Dosland, Hunter & Malecki, New Ulm, for appellant.

Heard, considered, and decided by PARKER, P.J., FOLEY and WOZNIAK, JJ.

## OPINION

WOZNIAK, Chief Judge.

Farm Bureau Mutual Insurance Company appeals the entry of summary judgment in favor of the Travers. Farm Bureau was the underinsurer for the Travers, who were involved in an accident with an underinsured motorist, Renner. Following notice of a tentative settlement with Renner, Farm Bureau substituted its check in order to protect its subrogation rights. Travers and Renner eventually concluded their lawsuit, without notice to Farm Bureau, through Renner's admission of liability and agreement to try damages to the court. Judgment was entered in *Traver v. Renner*. The trial court found Farm Bureau was bound by the judgment entered in that case. We affirm.

## FACTS

On July 15, 1984, respondents Marvin and Marcella Traver were involved in an automobile accident with Wendy Renner. The Travers were both seriously injured. Renner had crossed the centerline of the road and struck the Travers's car head-on. Renner's blood alcohol content was .103.

Renner was insured by Dairyland Insurance Company (Dairyland), with policy liability limits of $25,000/$50,000 (per person/per occurrence). The Travers's insurer was Farm Bureau Mutual Insurance Company (Farm Bureau); their policy contained underinsured motorist (UIM) coverage of $250,000/$500,000.

The Travers commenced suit against Renner. In January 1985, Dairyland offered its $50,000 policy limits to the Travers. The Travers gave notice of the proffered settlement to Farm Bureau pursuant to the requirements of *Schmidt v. Clothier*, 338 N.W.2d 256 (Minn.1983).[1] Farm Bureau substituted its $50,000 check in order to protect its potential subrogation rights.

The *Schmidt* agreement preserves the subrogation rights of Farm Bureau. It also states:

It is understood that as to any verdict or judgment obtained by [the Travers] which is in excess of the [policy limits paid herein], the underinsured motorist limits shall apply to such verdict or judgment.

The Travers then continued the litigation against Renner.

Farm Bureau's attorney wrote several letters to the Travers's attorney purporting to express an agreement that Farm Bureau was only bound by a jury determination of negligence and damages in *Traver v. Renner*.

The Travers and Renner eventually reached an agreement whereby Renner would confess judgment in the amount of $300,000 per person. The Travers then would bring an action against Farm Bureau to enforce the judgment. They scheduled a confession of judgment hearing to formalize this settlement. Three days prior to the hearing, Farm Bureau was given notice of the agreement, and objected. The parties then canceled the hearing.

On July 22, 1986, the Travers and Renner concluded an agreement whereby Renner would admit to liability in exchange for dismissal of the Travers's punitive damages claim. The Travers and Renner also agreed to a bench trial on the issue of damages. Renner agreed to waive hearsay and foundation objections regarding the ad-

mission of photos, medical records, and expenses incurred by plaintiffs.

The agreement also provided:

3. That [Renner] admits that any judgment subsequently entered in favor of [the Travers] against [Renner] is a personal judgment, but [the Travers] agree to seek satisfaction of said judgment from proceeds of any applicable insurance.

4. That upon request [the Travers] will provide [Renner] with a release of lien as to any real estate which may be affected by the entry of these judgments. That upon payment of all sums payable by [Renner's] liability insurance and all sums recoverable under [the Travers'] underinsured motorist coverage, [the Travers] will provide [Renner] with a full satisfaction of judgment, and a release of all claims.

The agreement then provided it would be null and void, and the parties returned to the status quo, "should this agreement in any way prevent the [Travers] from recovering underinsured motorist benefits."

Farm Bureau was not given notice of this agreement, and did not learn of it until after judgment was entered in *Traver v. Renner*. Renner's attorney spoke with Farm Bureau's attorney on two occasions prior to the July 22 settlement agreement; on both occasions, she told him that Renner was considering confessing liability and trying damages to the court.

Pursuant to the agreement, damages were tried to the court. The court was aware an agreement had been reached regarding the admissibility of evidence and the dismissal of the punitive damages claim, but was not aware the parties agreed damages would be sought out of insurance funds, rather than directly from Renner. Renner's attorney had informed Renner that any payment by Farm Bureau would give Farm Bureau a right of subrogation against her.

---

**1.** *Schmidt* held that where a settlement is contemplated with a tortfeasor before processing an underinsurance claim, the underinsurer is entitled to written notice of the tentative settlement. The underinsurer then has 30 days in which to substitute its payment to the insured (in an amount equal to the settlement offer) in order to protect its subrogation rights against the underinsured tortfeasor. *Id.* at 263.

Based on the evidence before it, the trial court awarded damages in excess of $305,-000 for Marvin Traver and in excess of $290,000 for Marcella Traver. When Farm Bureau refused to accept this judgment as a determination of the damages its insured received, the Travers commenced this suit against Farm Bureau. The Travers brought a summary judgment motion, seeking a determination that Farm Bureau was bound by the determination of damages in *Traver v. Renner,* and that the underinsured benefits applied.

The trial court granted summary judgment against Farm Bureau for the full policy limits. The court noted that Farm Bureau had received *Schmidt* notice over one and one-half years prior to the determination of damages in the underlying case, but chose not to intervene. The court also reasoned that, since Farm Bureau knew about the scheduled confession of judgment hearing, it knew that the parties were approaching a negotiated settlement. Farm Bureau was aware that issues relevant to its interests were being determined, yet chose not to intervene.

## ISSUES

1. Did the agreement to confess liability destroy Farm Bureau's right of subrogation against Renner?

2. Is Farm Bureau bound by the judgment entered in *Traver v. Renner*?

## ANALYSIS

Upon review of an order granting summary judgment, this court must determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979).

1. Farm Bureau argues that the Travers forfeited their right to recover UIM benefits for three reasons. First, it argues the Travers are not "legally entitled to recover" damages under the July 22 agreement, so they are not entitled to UIM benefits under the insurance contract. Second, Farm Bureau argues that the July 22 agreement provides a release of Renner, so

destroys its potential subrogation rights. Third, Farm Bureau did not receive prior notice of the July 22 settlement, which it argues is a requirement under *Schmidt.*

### A. "Legally entitled to recover."

■ The insurance contract requires that the Travers, in order to collect UIM benefits, must be "legally entitled to recover" damages against Renner. The July 22 agreement states that the Travers would seek satisfaction of any judgment entered against Renner "from the proceeds of any applicable insurance." Farm Bureau argues that, since the Travers have agreed not to pursue Renner individually, they are not "legally entitled to recover" against Renner.

A similar argument was rejected by the supreme court in *Miller v. Shugart,* 316 N.W.2d 729 (Minn.1982). In *Miller,* the defendant entered into a stipulated settlement of the plaintiff's claims in which they agreed to confess judgment in the amount of $100,000. The agreement further provided that it could be collected only from the proceeds of applicable insurance, with no personal liability to defendants. The insurer, from whom plaintiff sought to collect a portion of this judgment, argued that the claim was not liquidated, as it did not obligate the defendants to pay anything. The court responded:

> While it is true that defendants need not pay anything, it is also true that the judgment effectively liquidates defendants' personal liability. We hold, therefore, that plaintiff may seek to collect on that judgment * * * against the insurer.

*Id.* at 732. Similarly, the insurer claims that Renner is not obligated to pay anything because of the agreement not to pursue her. As in *Miller,* the settlement and eventual judgment in this case "effectively liquidates defendant's personal liability." The Travers may seek recovery from applicable insurance proceeds despite the agreement not to pursue Renner.

### B. Application of the release provisions of *Schmidt.*

The July 22 agreement also provided that, after the insurance policies were paid,

the Travers would "provide [Renner] with a full satisfaction of judgment, and a release of all claims."

*Schmidt* addresses the effect of a tortfeasor's release in the UIM context:

> Once an insurer has paid the benefits it contractually owes to its insured and gives notice thereof to the tortfeasor, a subsequent release obtained by the tortfeasor *will not defeat the subrogation right* but rather will be viewed as a waiver of the rule against splitting the cause of action.

> \* \* \* \* \* \*

> [W]e hold that settlement and release of an underinsured tortfeasor does not preclude recovery of underinsurance benefits.

> \* \* \* \* \* \*

> The underinsurer, however, will have this subrogation right against the tortfeasor only if it has paid underinsurance benefits prior to the release of the tortfeasor. Thus, the underinsurer is entitled to notice of the tentative settlement and an opportunity to protect those potential rights by paying underinsurance benefits before release.

*Id.* at 262, 263 (emphasis added); *accord, Boehm v. Citizens Security Mutual Ins. Co.,* 414 N.W.2d 232 (Minn.Ct.App.1987) (by following *Schmidt* and paying plaintiffs the amount offered in settlement, insurer free to proceed against those found at fault and responsible for plaintiffs' damages).

 Under *Schmidt,* when two conditions are met, the underinsurer's subrogation rights thus arise as a matter of law and cannot be defeated by any subsequent release by the underinsured tortfeasor. First, the tortfeasor's initial settlement offer must be communicated to the underinsurer. This fact is not disputed.

Second, the underinsurance benefits must have been paid before the release of the tortfeasor. The agreement between the Travers and Renner specifically provides that a release will be furnished the Travers *only upon* "payment of \* \* \* all sums recoverable under plaintiff's underin-

sured motorist coverage." Renner has yet to be released. There will be no release, under the agreement, until payment of the underinsured benefits. Farm Bureau's potential subrogation rights still exist. Renner would necessarily be aware that such benefits were paid when a release is received, as it is a precondition to any release.

**C. Lack of Notice.**

 Farm Bureau argues that it did not receive notice of the July 22 settlement agreement, so under *Klang v. American Family Ins. Group,* 398 N.W.2d 49 (Minn. Ct.App.1986), the Travers forfeited their right to receive UIM benefits. In *Klang,* an insured was denied underinsured benefits because he failed to provide *Schmidt* notice to the insurer prior to entering into a settlement with the underinsured tortfeasor.

Farm Bureau received the notice required under *Schmidt* and *Klang.* The notice is of the initial tentative settlement, and is required in order to allow the insurer to protect its potential subrogation interest. *Schmidt,* 338 N.W.2d at 263; *Klang,* 398 N.W.2d at 50. Here, Farm Bureau was allowed to protect its subrogation rights by substituting its check, which it did.

2. Farm Bureau argues it is not bound by the judgment entered in *Traver v. Renner* for two different reasons. It argues there was an agreement to try the underlying case to a jury, and that the lack of pure adversity between the Travers and Renner precludes the application of the adverse judgment.

**A. Agreement to be bound only by jury determination.**

 In order to enforce an executory promise, it must be supported by legal consideration. *Stanley Trucking Co., Inc. v. National Indemnity Co.,* 271 Minn. 311, 313, 136 N.W.2d 101, 103 (1965). On appeal, Farm Bureau does not point to any consideration which would support the enforceability of such an agreement. We agree with the trial court that this purported agreement is not enforceable.

**B. Lack of adversity between Travers and Renner.**

Farm Bureau argues it should not be bound by the judgment because it may have been collusive. While the agreement to confess liability and subsequent trial of the damages issue do lack some of the indicia of a pure adversarial proceeding, the trial court accounted for this when it ruled on whether the agreement and subsequent trial were binding on Farm Bureau. It specifically determined that, under the guidelines of *Miller*, this judgment had the indicia of reliability that supports a finding that the settlement was reasonable and prudent, and thus enforceable against the insurer.

While *Miller* dealt with the indicia of reliability for a settlement under an indemnification claim, its underlying rationale applies to procedures for settlement following a *Schmidt* payment. The court was concerned with the possibility of a settlement being fraudulent or collusive. *Miller*, 316 N.W.2d at 734. This is exactly the concern expressed in this case. Additionally, *Miller* involved an insurer who had knowledge that the parties were contemplating settlement; despite knowledge that its interests might not be adequately protected, the insurer chose not to intervene. Similarly, we are faced with the question of the enforceability of the judgment against an insurer who chose not to intervene. Farm Bureau chose not to intervene, but clearly was entitled to intervention upon a showing that its rights were not adequately represented. *See Erickson v. Bennett*, 409 N.W.2d 884, 886 (Minn.Ct.App.1987).

**Application of *Miller*.**

*Miller* directs the court to look at the settlement and its surrounding circumstances to determine whether "a reasonably prudent person in the position of the defendant" would have settled the case in the amount and manner settled for under those circumstances. *Miller*, 316 N.W.2d at 735.

The question of the reasonableness of the settlement is a question of law for the court, so would be reviewable by this court on a de novo basis. *Id.* at 736; *see*

*Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 354 (Minn.1978).

The reasonableness of the settlement involves a determination of whether the settlement was entered into at a time when it was clear that a jury "could have" found them liable and whether a jury "could have" found damages in excess of the amount of the settlement. *Lemmer v. IDS Properties, Inc.*, 304 N.W.2d 864, 869 (Minn.1980).

In the case of a settlement before trial, the burden is on the proponent of the bona fides of the settlement to establish its reasonableness. *Miller*, 316 N.W.2d at 735.

As the trial court found, the Travers met their burden of showing that the settlement was reasonable. We agree with the court's assessment that this settlement had indicia of "objectivity and reliability utterly lacking in a mere stipulation." *Miller* upheld a stipulated judgment; in this case, damages were tried to the court, a more reliable determination of that issue.

The only possibility for collusion in this case involves the agreement to confess liability and the agreement to waive foundation and hearsay objections for certain pieces of evidence. Under these facts, confessing liability is reasonable in return for dropping the punitive damages claim, given Renner's blood alcohol content and the fact she was driving on the wrong side of the road. A jury certainly could have found Renner liable under these circumstances. Stipulating to foundation for some evidence was reasonable when examining the factual posture of this case; Renner's attorney did, in an 8-page memorandum, dispute the determination and amount of damages found by the court.

**DECISION**

Following substitution of payment under *Schmidt*, an underinsurer is obligated to protect its interests to the extent that it chooses. As Farm Bureau chose to let the litigation proceed without intervening, it is bound by the eventual settlement if the

settlement meets the reasonableness standards enunciated in *Miller v. Shugart.* The facts of this case confirm the reasonableness of the settlement.

Affirmed.