Patricia HARTFIEL, judgment Creditor, Respondent,

v.

Terry W. McLENNAN, judgment Debtor, Respondent,

and

MSI Insurance Company, Garnishee, Appellant.

No. C5–88–884.

Court of Appeals of Minnesota.

Oct. 11, 1988.

R. Stephen Tillitt, Gislason, Dosland, Hunter & Malecki, Minnetonka, for Patricia Hartfiel.

Timothy K. Dillon, Moratzka, Dillon, Kunkel & Storkamp, Cannon Falls, for Terry W. McLennan.

Jack D. Moore, Richard J. Kruger & Associates, St. Paul, for MSI Ins. Co.

Heard, considered and decided by WOZNIAK, C.J., and FOLEY and NORTON, JJ.

## OPINION

NORTON, Judge.

Respondent Patricia Hartfiel commenced this garnishment action against appellant MSI Insurance Company in order to collect on a stipulated judgment entered against MSI's insured, respondent Terry W. McLennan. The trial court granted partial summary judgment to strike two defenses which MSI asserted in its answer, but de-

nied summary judgment as to the reasonableness of the stipulation. Judgment was thereafter entered by stipulation of the parties. We affirm in part, reverse in part and remand.

## FACTS

On October 2, 1976, Patricia Hartfiel was struck by Terry McLennan's car while she was walking in the parking lot of Gloria's 101 Club in Corcoran, Minnesota. On the date of the accident, McLennan had liability coverage regarding the operation of his vehicle through MSI Insurance Company.

MSI first received notice of the accident in a letter from an attorney retained by Hartfiel on February 14, 1979. MSI denied liability coverage to McLennan in a letter dated June 5, 1979 due to its inability to adequately investigate the facts surrounding the accident because of McLennan's failure to give timely notice. On December 4, 1979, Hartfiel commenced an action against McLennan for personal injuries which she received in the accident. Because MSI denied liability coverage, McLennan retained legal counsel on his own.

When MSI denied coverage of McLennan, Hartfiel sought uninsured motorist coverage from her insurer, Agricultural Insurance Company. Agricultural Insurance Company settled her claims for a payment of $15,000 in uninsured motorist benefits and $5,043.90 in PIP benefits. The action between Hartfiel and McLennan was settled when the parties stipulated that a $20,483.90 judgment could be entered against McLennan, provided that Hartfiel would satisfy the judgment only from whatever liability insurance coverage McLennan had on the accident date. The settlement agreement was entered into pursuant to *Miller v. Shugart*, 316 N.W.2d 729 (Minn. 1982). Based upon that settlement agreement, judgment was entered in favor of Hartfiel on October 17, 1984.

Hartfiel commenced the present garnishment action by serving a garnishment summons and disclosure form upon MSI on May 15, 1986. The supplemental complaint in garnishment, pursuant to Minn.Stat. § 571.51, was served on August 25, 1986. The purpose of this action is to contest MSI's denial of liability coverage and collect the money judgment. The supplemental complaint alleges that Agricultural Insurance Company is subrogated to any claim of its insured against Terry McLennan or MSI Insurance Company.

MSI interposed an answer to the supplemental complaint alleging two defenses: that Hartfiel's claim was barred by the statue of limitations and that no coverage existed for McLennan because of a failure to give timely notice. The district court, on Hartfiel's motion for partial summary judgment, had these two defense stricken from appellant's answer on the grounds that appellant had wrongfully denied coverage to McLennan. Hartfiel then moved for summary judgment on the balance of her claim against MSI, asking the court to declare the settlement to be reasonable. The trial court denied this motion. Appellant and respondent then entered into a stipulation for entry of judgment. This appeal and notice of review followed.

## ISSUES

I. May an insurance company assert defenses in an action brought by an injured party and her insurance company for subrogation?

II. Did the trial court err in denying summary judgment as to the reasonableness of the stipulated settlement?

## ANALYSIS

On appeal from a summary judgment, the appellate court determines whether any genuine issue of material fact exists and whether the trial court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn. 1979).

## I.

MSI interposed two defenses in its answer to the supplemental complaint. These two defenses were stricken by the trial court on the basis that Minn.Stat. § 65B.49, subd. 3(3) (1986) makes the insurer's liabili-

ty absolute whenever injury or damage occurs. Minn.Stat. § 65B.49, subd. 3 provides:

(3) Every plan of reparation security shall be subject to the following provisions which need not be contained therein:

(a) *The liability of the reparation obligor* with respect to the residual liability coverage required by this clause *shall become absolute whenever injury or damage occurs;* such liability may not be cancelled or annulled by any agreement between the reparation obligor and the insured after the occurrence of the injury or damage; no statement made by the insured or on the insured's behalf and *no violation of said policy shall defeat or void said policy.*

(emphasis added).

MSI argues that this statute applies only when the real party in interest is the injured. MSI claims that the real party in interest is not Hartfiel, but is Hartfiel's insurance company, on the basis of the supplemental complaint which states, "Agricultural Insurance Company is subrogated to any claim of its insured against Terry McLennan or MSI Insurance Company."

This court has stated that section 65B.49 can only be invoked for the benefit of accident victims and not for insurance companies seeking to avoid their contractual liabilities. *See Transamerican Insurance Company v. Austin Farm Center, Inc.,* 354 N.W.2d 503, 507 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Feb. 6, 1985). In *Transamerican,* this court held that when the injured has been compensated, the purpose of the applicable insurance law is satisfied. Once the injured party was compensated, the question of which insurance company should ultimately bear the burden of loss had to be resolved according to the terms of the insurance policies involved. *Id.*

The supreme court made a similar decision when interpreting the predecessor statute, Minn.Stat. § 170.40, subd. 6(1) (1972). The supreme court held that the Minnesota Safety Responsibility Act, whose purpose was to assure that members of the traveling public are compensated for injuries, should be liberally construed to effect that legislative aim. *Leppla v. American Family Insurance Group,* 306 Minn. 478, 238 N.W.2d 592, 595 (1976). However, the statute is remedial only in favor of an injured third person, and the statute should not provide a defense when the injured party has been compensated and it is an insurance company seeking payment. *See id.*

In *Leppla,* American Family denied liability coverage to its insured on the basis that its insured failed to comply with policy provisions. The insured then stipulated to entry of judgment of $10,000 against him if the plaintiff looked to the defendant's insurer for payment. Plaintiff then collected $19,000 in uninsured motorist benefits and agreed to reimburse its insurance carrier out of any recovery. *Id.* 238 N.W.2d at 593. Plaintiff then sued American Family to enforce the policy and collect the judgment. When American Family interposed the breach of policy defense, plaintiff sought to avoid the defense by interposing the statute. The court found that the plaintiff was not the real party in interest, because he had "no beneficial interest in the recovery" and that the uninsured motorist carrier was the party with the actual beneficial interest. *Id.* 238 N.W.2d at 594.

In the present case, it is clear that the injured party, Hartfiel, has been fully compensated for her injuries sustained in the accident. Hartfiel received $20,483.90 from her insurance company in PIP benefits and in uninsured motorist benefits. The judgment taken against McLennan was for this amount. Any amount received by Hartfiel would either be paid to her insurance company because of its contractual subrogation right or deducted to prevent double recovery of the amount already paid to her in PIP benefits. *See* Minn.Stat. § 65B.51, subd. 1 (1986). Therefore, Hartfiel is not the real party in interest.

Based on *Leppla* and *Transamerican,* the provisions of Minn.Stat. § 65B.49, subd. 3(3) do not apply to this case, since it is apparent that two insurance companies are the real parties in interest. It is clear

that the purpose of the no-fault insurance act has been fulfilled since Hartfiel has been fully compensated for any injuries which she sustained. The trial court erred in striking MSI's defenses on the basis of section 65B.49. We do not reach the merits of these defenses, because the trial court did not consider them. Appellant is allowed to plead and prove on the merits, if it can, the defenses of statute of limitations and delayed notice.

## II.

Hartfiel claims that the trial court erred in denying summary judgment as to the reasonableness of the *Miller v. Shugart* settlement. *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982) provides that where an insurance carrier has denied coverage for a liability claim brought against its insured, the insured may stipulate with the plaintiff injured party to entry of judgment against him. In that way, the insured can avoid any personal financial liability for the claim and the plaintiff may contest the insurer's denial of coverage through a garnishment action.

■■■ In these circumstances, the judgment is binding and valid as between the stipulating parties, but it is not conclusive on the insurer. *Id.* at 735. If settlement occurs prior to trial, the burden of proof is on the claimant to show that the settlement is reasonable and prudent. *Id.* "The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial." *Id.* The reasonableness of the settlement involves a determination of whether the settlement was entered into at a time when it was clear that a jury "could have" found them liable and whether a jury "could have"

found damages in excess of the amount of the settlement. *Lemmer v. IDS Properties, Inc.*, 304 N.W.2d 864, 869 (Minn.1980).

■■■ On a motion for summary judgment, it is a trial court's duty to determine under the guidelines of *Miller* that the judgment had indicia of reliability which support a finding that the settlement is reasonable and prudent, and thus enforceable against the insurer. *See Traver v. Farm Bureau Mutual Insurance Co.*, 418 N.W.2d 727, 732 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. Apr. 15, 1988).

The trial court did not give reasons for denying Hartfiel's motion for summary judgment as to the reasonableness of the settlement between Hartfiel and McLennan. However, it is apparent to us that there are material facts in dispute which relate to the reasonableness of the *Miller v. Shugart* settlement. The degree of Hartfiel's comparative negligence, if any, is disputed by the parties. This disputed material fact would affect the reasonableness of the settlement and distinguishes this case from *Traver*, 418 N.W.2d 727; *Osgood v. Medical, Inc.*, 415 N.W.2d 896 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Feb. 12, 1988); *Buysse v. St. Paul Fire & Marine Insurance Co.*, 428 N.W.2d 419 (Minn.Ct.App.1988) where this court has held that the determination of the question of reasonableness is a question of law for the court. All of these cases involved summary judgments where no questions of material fact were in dispute.

■■■ However, we dispute that the language in *Economy Fire & Casualty Co. v. Iverson*, 426 N.W.2d 195 (Minn.Ct.App. 1988), *pet. for rev. granted* (Minn. July 28, 1988) where this court stated "the determination of the settlement's reasonableness and finality requires a separate trial," applies in all cases. In *Economy,*[1] as in

---

**1.** The "no action" clause in *Economy's* policy read: "No action shall be brought against us unless there has been compliance with the policy provisions. No one shall have any right to join us as a party to any action against any insured. Further, no action with respect to Cov-

erage E (liability) shall be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us." *Economy,* 426 N.W.2d at 200–01, n. 4.

*Miller*,[2] the specific policies provided that a judgment was not conclusive on the insurer until the insurer had the opportunity to litigate the issues of whether it was bound by the judgment. There is no evidence that MSI's policy has this requirement.

We do not believe a jury trial is required under *Miller*. Two essential factors underlying the *Miller* decision are that an insurer who disputes coverage cannot compel an insured to forego a settlement which is in the insured's best interest, and any risk that a judgment is within the insurer's policy limits should be borne by the insurer who decided to contest the coverage. *Miller*, 316 N.W.2d at 734. The insurer could have chosen to fully participate in the litigation when its insured gave notice of the claim, but declined. There is no language in *Miller* which would lead us to believe that such an insurer would be entitled to a jury trial as to the reasonableness of a settlement in which it refused to participate. Rather, *Miller* allows the insurer to fully litigate whether the judgment is within the policy coverage. *Id.* at 733–34. The issue of whether MSI is liable for the settlement under the policy is distinct from the issue of whether a settlement is reasonable. *Jostens, Inc. v. CNA Insurance/Continental Casualty Co.*, 403 N.W. 2d 625, 629 (Minn.1987).

It is for the trial court to determine the reasonableness of a settlement, when it has sufficient facts to make such a determination. The trial court may request any further evidence on remand so that it can make a determination of the reasonableness of the *Miller v. Shugart* settlement.

## DECISION

The trial court erred in striking respondent's defenses of statute of limitations and delayed notice. The trial court did not err in denying summary judgment as to the reasonableness of the settlement. We re-

mand for further proceedings in accord with this opinion.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

WOZNIAK, Chief Judge (concurring specially and dissenting).

I concur in part and dissent in part. I concur in that the reasonableness of a *Miller–Shugart* agreement should be decided as a matter of law by the trial court, but I dissent in that the insurer's defenses here should not be allowed.

### I.

An effective analysis of the issues in this case and numerous similar cases requires a proper understanding of the seminal case of *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982).

In *Miller*, Miller was injured in an accident while riding in a car driven by Shugart. Locoshonas owned this vehicle. Miller sought recovery from Locoshonas' insurer, Milbank Mutual Insurance Company. Milbank denied coverage, contending that Shugart was not an agent of the owner. Milbank instituted a declaratory judgment action to determine the coverage question, and provided counsel for both Locoshonas and Shugart.

The trial court determined that both Shugart and Locoshonas were covered under Locoshonas' policy. After this determination, Miller brought an action against both Shugart and Locoshonas. While Milbank's appeal of the declaratory judgment was pending, counsel for Shugart and Locoshonas twice informed Milbank that they were approaching settlement with Miller. Milbank refused to participate in these settlement negotiations because the coverage issue was unresolved. A settlement was reached, and Shugart and Locoshonas confessed judgment in an amount in excess of the Milbank policy. The trial court en-

---

**2.** The "no action" clause involved in *Miller* read: "No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor shall an action lie under the liability coverage until the amount of the in-

sured's obligation to pay shall have been fully determined either by judgment against the insured after actual trial or by written agreement by the insured, the claimant and the company." *Miller*, 316 N.W.2d at 736, n. 7.

forced this judgment in the amount of the insurance policy against Milbank. Miller had agreed, as a condition of settlement, to relieve the defendants of any personal liability and only seek payment of the judgment from insurance funds.

On appeal, the supreme court affirmed. The court said that a threshold issue existed as to whether the insureds breached their contractual duty to cooperate before the policy coverage had been decided. *Id.* at 733. The court noted that Milbank had not abandoned its insured, but had done exactly as the court had suggested by bringing the declaratory judgment action. *Id.* By bringing a declaratory judgment action, the insurer was neither abandoning the insured nor accepting liability for the insured's exposure. *Id.* After emphasizing the above considerations, the court rephrased the issue as

> how should the respective rights and duties of the parties to an insurance contract be enforced during the time period that application of the insurance contract itself is being questioned.

*Id.* Milbank was essentially arguing that it had a right to have the coverage issue decided prior to the disposition of the underlying personal injury action. *Id.* The court ruled that an insurer had no such right.

The court next addressed the question of whether the stipulated judgment had been obtained by fraud or collusion. The supreme court recognized the potential bind in which stipulated judgments place insurers, but decided that the insurers should bear the risk:

> If the insurer ignores the "invitation" to participate in the settlement negotiations, it may run the risk of being required to pay * * * an inflated judgment. On the other hand, if the insurer decides to participate in the settlement discussions, ordinarily it can hardly do so meaningfully without abandoning its policy defense. Nevertheless, it seems to us, if a risk is to be borne, it is better to have the insurer who makes the decision to contest coverage bear the risk.

*Id.* at 734. The court then held as a matter of law that the stipulated judgment was not obtained by fraud or collusion. *Id.*

The final issue addressed by the court was whether the settlement was reasonable. To determine if a settlement is reasonable, one must look at

> what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial.

*Id.* at 735. Although in granting summary judgment the trial court had not addressed the reasonableness issue, the court examined the record to determine as a matter of law whether the settlement was reasonable and prudent. The court noted that not much evidence had been submitted to the trial court, but nevertheless concluded that the settlement was reasonable. *Id.* at 736. This conclusion was based on uncontested facts and on the insured's attorney's uncontested conclusion that "there was a substantial likelihood that ultimately judgment would be entered against his clients * * * for more than any possible insurance coverage * * *." *Id.*

*Miller* involved a conflict between the competing public interests in settlement of disputes and in allowing the insurer to be heard on the issue of policy coverage. The court in *Miller* resolved this conflict by enforcing a judgment, even though the court recognized the insurer's resulting difficult position. The court, however, did place some restrictions on the enforcement of these judgments. An insurer can protect itself by bringing a declaratory judgment action on the coverage issue, challenging the settlement as fraudulent or collusive, and challenging the settlement as unreasonable or imprudent. Given the frequent references in *Miller* to the fact that the insurer had not abandoned its insureds, it is clear that the court intended these protections to be available at least to an insurer which has not abandoned its insured.

## II.

The precise issue presented here concerns what protections are allowed an insurer which abandons its insured. I believe that in this situation the insurer waives the right to have the court decide the issue of coverage. The insurer is then entitled only to those protections set forth in *Miller*.

### A.

Under the reasoning in *Miller* and its progeny, an insurer should only be allowed to litigate the issue of coverage when the insurer has brought a declaratory judgment action. If an insurer is not required to bring a declaratory judgment action, the insurer may unfairly benefit. The insurer could deny coverage and force the insured to defend in the underlying litigation. If the insured prevails, the insurer has succeeded without risk. If the insured does not prevail, the insurer could relitigate the entire case. Insurers should be required to use the convenient declaratory judgment action so that insurers are not allowed two opportunities to have their defenses litigated. If the insurer chooses not to use a declaratory judgment action, I would hold that it is bound by its choice to abandon its insured, and therefore cannot raise defenses against it in the underlying litigation.

Moreover, requiring the insurer to pursue declaratory judgment actions promotes judicial economy because it avoids having two trials on the same issues. If we were to allow the insurer to litigate the underlying issues, as my colleagues believe we should do, we might have two trials on the same issues even though the claim has already been settled. Allowing such a result contradicts the underlying policy in *Miller* in favor of settlement and judicial economy.

Our cases applying *Miller* do not preclude requiring the insurer to use a declaratory judgment action. For instance, in *Osgood v. Medical, Inc.*, 415 N.W.2d 896, 900 (Minn.Ct.App.1987), *pet. for rev. denied* (Minn. Feb. 12, 1988), the trial court, after a settlement had been reached, did address the question of indemnity. How-ever, in *Osgood*, the insurer had not abandoned its insured, and therefore all interested parties were in the action at the time of trial. *Id.*

Also, in *Traver v. Farm Bureau Mutual Insurance Co.*, 418 N.W.2d 727, 732 (Minn. Ct.App.1988), *pet. for rev. denied* (Minn. April 15, 1988), this court only allowed the insurer to contest the reasonableness of the settlement, not the underlying facts which led to the settlement. In addition, the court noted that the insurer in *Traver* was able to protect its interests because it was informed of the proposed settlement agreement and it was free to intervene. *Id.* at 731–32. Neither *Osgood* nor *Traver*, therefore, precludes requiring insurers to use declaratory judgment actions.

MSI in this case did not bring a declaratory judgment action. Instead, it abandoned its insured. In this situation, fairness and judicial economy require that MSI be precluded from raising its defenses. For the foregoing reasons, I respectfully dissent.

### B.

MSI has waived its right to litigate the underlying liability action here because MSI failed to institute a declaratory judgment action. Nevertheless, MSI still is protected under *Miller* from fraudulent or collusive settlements as well as unreasonable settlements. MSI can still address these issues because they concern the process of settlement rather than a determination of facts already admitted in the settlement. Since MSI does not argue that this settlement was fraudulent or collusive, I will not address that issue.

The disagreement on this court centers on whether the determination of reasonableness is to be made by the trial court as a matter of law or by the jury. Under *Miller*, the determination of reasonableness

> involves a consideration of the facts bearing on the liability and damage aspects of the plaintiff's claim, as well as the risks of going to trial.

316 N.W.2d at 735. Thus, *Miller* does not require a trial on the facts bearing on plaintiff's claim; it requires a consideration of the underlying process that led to the *Miller* settlement. The inquiry should focus on things such as factual allegations, problems of proof, and risks of going to trial, rather than the already determined liability and damages issues. Such an inquiry into reasonableness is best undertaken by a trial court rather than a jury.

FOLEY, Judge (concurring specially and dissenting).

I concur in part and dissent in part. I concur that this case should be remanded to the district court for trial allowing the defenses raised by appellant, but I disagree that we rule as a matter of law that it be a court rather than jury trial. I submit the right to trial by jury on the question of reasonableness of the settlement that arises in a *Miller–Shugart* setting is guaranteed by the Minnesota Constitution.

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy. A jury trial may be waived by the parties in all cases in the manner prescribed by law. The legislature may provide that the agreement of five-sixths of a jury in a civil action or proceeding, after not less than six hours' deliberation, is a sufficient verdict.

Minn. Const. art. I, § 4. *See* Minn.R.Civ.P. 38.01 and 39.01.

In *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982), the case was decided on cross-motions for summary judgment on *undisputed facts.* That left no material fact issues for trial and on that state of the record could be decided as a matter of law. *Id.* at 736. I do not read *Miller* as holding that summary judgment is appropriate in every settlement case or that if there is a trial, the case be determined by the court alone. Yet, that is what the majority holds, notwithstanding the constitutional right to trial by jury where money damages are sought, and here there are other factual issues raised by the defenses we now allow and with respect to the policies involved.

In *Lemmer v. IDS Properties, Inc.*, 304 N.W.2d 864, 870 (Minn.1980), a jury trial was waived, as it was in *Traver v. Farm Bureau Mutual Insurance Co.*, 418 N.W.2d 727 (Minn.Ct.App.1988), *pet. for rev. denied* (Minn. April 15, 1988), where the *settlement agreement provided for trial of damages "to the court." Id.* at 729 (emphasis added). When *Traver* speaks of determining reasonableness of settlement as a matter of law, it is based on the factual and procedural posture of *Miller.* With *undisputed* facts, it can be determined as a matter of law by the court, not otherwise. Nor is there any language of the Supreme Court to suggest such a contrary conclusion. In *Miller,* the supreme court held:

> [W]hile the judgment is binding and valid as between the stipulating parties, it is not conclusive on the insurer. The burden of proof is on the claimant, the plaintiff judgment creditor, to show that the settlement is reasonable and prudent. The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the *liability and damage aspects of plaintiff's claim,* as well as the risks of going to trial.

*Id.* at 735 (emphasis added), *quoted in Economy Fire & Casualty Co. v. Iverson,* 426 N.W.2d 195, 200 (Minn.Ct.App.1988), *pet. for rev. granted* (Minn. July 28, 1988). The supreme court further held:

> Plaintiff's stipulated judgment was not conclusive on the insurer until the insurer had an opportunity to litigate the issues of whether or not it was bound by the judgment.

*Miller,* 316 N.W.2d at 736, *quoted in Economy,* 426 N.W.2d at 200.

My colleagues and I differ as to the nature of the proceeding on remand to determine reasonableness, i.e., by a motion for summary judgment—a court trial—or a jury trial. It may be that each case that involves a *Miller–Shugart* settlement will have to be separately examined as to the

manner and way in which the issues are raised and to be litigated.

In negligence cases where damages are sought for either or both personal injury or property damage, it is fundamental law that trial by jury is awarded the parties, unless waived. *See* Minn. Const. art. I, § 4. It should be no different with respect to a *Miller–Shugart* settlement. Since the settlement is not binding on the insurer, *Miller*, 316 N.W.2d at 735, and since reasonableness is tested by a consideration of the *entire circumstances as to liability and damages*, the right to trial by jury should be preserved, including the issue of comparative fault. *See Economy*, 426 N.W.2d at 200 n. 2.

I differ with my learned colleague Chief Judge Wozniak when he held in *Osgood v. Medical, Inc.*, 415 N.W.2d 896 (Minn.Ct. App.1987), *pet. for rev. denied* (Minn. Feb. 12, 1988), that reasonableness is to be determined as a matter of law by the court. *Id.* at 903. That holding was based on *Miller*, but a close reading of *Miller* reflects that summary judgment was upheld in that case on *undisputed facts*. To the extent the majority holds that reasonableness is a question of law in *every* case determined *solely* by the court, *Osgood*, *Traver* and *Buysse v. Baumann–Furrie & Co.*, 428 N.W.2d 419 (Minn.Ct.App.1988), should be overruled.

What the Michigan Supreme Court has said as to the resolution of negligence issues by a jury rather than by the court is equally applicable here on the question of fact as to the reasonableness of a *Miller–Shugart* settlement.

> The preference for jury resolution of the issue of negligence is not, however, simply an expedient reflecting the difficulty of stating a rule that will readily resolve all cases; rather, it is rooted in the belief that the jury's judgment of what is *reasonable* under the circumstances of a particular case is more likely than the judicial judgment to represent the community's judgment of how *reasonable* persons would conduct themselves.

*Moning v. Alfono*, 400 Mich. 425, 435–36, 254 N.W.2d 759, 763 (1977) (emphasis added).