**ALTON M. JOHNSON CO., a/k/a Alton M. Johnson Company, Judgment Creditor/Respondent,**

v.

**M.A.I. COMPANY, formerly Mutual Agency, Inc. and Leroy E. Larson, Judgment Debtors,**

and

**Gary Frederickson, Intervenor/Respondent,**

and

**Employers Reinsurance Corporation, Garnishee/Appellant.**

**No. C3–89–1042.**

Court of Appeals of Minnesota.

Feb. 13, 1990.

Review Granted April 13, 1990.

Herbert C. Davis, Davis & Racette, Chartered, St. Louis Park, for judgment creditor/respondent.

Howard Helgen, Tierney, Norton & Helgen, Minneapolis, for intervenor/respondent.

Peter Lind, Foster, Waldeck & Lind, Minneapolis, for garnishee/appellant.

Considered and decided by KLAPHAKE, P.J., and PARKER and FOLEY, JJ.

## OPINION

KLAPHAKE, Judge.

This is an appeal in a garnishment action from an order and judgment of the district court following a court and jury trial and post trial motions. The trial court deter-mined that the reasonableness of a *Miller v. Shugart* settlement was a nonjury issue and concluded the settlement was reasonable. Judgment was entered against Employers Reinsurance Corporation, as garnishee, in the sum of $355,145.27. Employers Reinsurance Corporation appeals.

## FACTS

Alton M. Johnson Company (Johnson) had been a manufacturer of electrical equipment since 1944. Some time prior to November 1, 1979 it discontinued its manufacturing operations. The Mutual Agency, Inc., and its successor M.A.I. Company (M.A.I.) had been Johnson's general insurance agents. Leroy Larson (Larson) of M.A.I. handled the Johnson account. When Johnson discontinued manufacturing operations, Larson discontinued products liability coverage and arranged for other coverage with Bituminous Casualty effective November 1, 1979.

On November 20, 1979 Gary Frederickson (Frederickson) was installing an electrical service extension in Rosedale Mall. An electrical switchboard manufactured by Johnson exploded and Frederickson received serious burns and other personal injuries. On September 29, 1980 Frederickson brought suit against Johnson and others. By letter dated October 16, 1980 Bituminous Casualty denied coverage for Johnson because its policy did not include products liability. Johnson thereupon contacted Larson noting the lack of coverage and its intent to make a claim against Larson. Larson then called the local agent for Employers Reinsurance Corporation (E.R.C.), his errors and omissions carrier, and was told that if anything developed the agent would send in a report to E.R.C. The Frederickson lawsuit proceeded to trial, which resulted in a judgment determining that Johnson was forty percent at fault and that Frederickson's total damages were $800,000.

After the verdict was rendered, Johnson brought suit against M.A.I. and Larson. Larson promptly tendered defense of the Johnson suit to E.R.C. E.R.C. declined to defend or indemnify, denying coverage to

Larson and M.A.I. on the basis that coverage was under a "claims made policy" and that no claim or notice of claim had been made during the policy period. E.R.C. further claimed that its policy with Larson and M.A.I. had been cancelled.

Larson and M.A.I. obtained counsel, who, after investigating the matter, concluded that Larson and M.A.I. were in a precarious position because of Larson's lack of understanding as to "tail coverage" and because of Larson's failure to advise Johnson of continued product liability risks after manufacturing ceased. Counsel concluded his clients had a possible exposure "somewhere in excess of $420,000".

While the Johnson action was proceeding, counsel for M.A.I. and Larson notified E.R.C. that they were contemplating settlement negotiations with Johnson and invited E.R.C. to join in the negotiations. E.R.C. declined. Thereafter a *Miller v. Shugart* style settlement was reached providing for entry of judgment against Larson and M.A.I. in the sum of $300,000 with a $1,500 payment to be made by Larson and M.A.I. personally, and calling for an assignment of their rights under the E.R.C. policy.

After entry of the judgment, Johnson served a garnishment summons on E.R.C. E.R.C. disclosed that no amounts were owed to Larson and M.A.I. and, thereafter, a supplemental complaint in garnishment was served upon E.R.C. Frederickson intervened.

The trial court first determined that the issue of the reasonableness of the *Miller v. Shugart* settlement was for the court and, after two days testimony and upon detailed findings of fact, concluded that the settlement was reasonable. Thereafter a jury trial was held on the issue of whether E.R.C. had been notified of a claim within the policy period. The jury's verdict was against E.R.C. and judgment was entered accordingly. E.R.C. appeals from the judgment and from an order denying a new trial.

## ISSUES

1. Was E.R.C. entitled to a jury trial on the issue of the reasonableness of the *Miller v. Shugart* agreement?

2. Was the *Miller v. Shugart* settlement reasonable as a matter of law?

3. Was Johnson, the judgment creditor, entitled to attorney fees and prejudgment interest from E.R.C.?

4. Did the trial court err in finding that the insurance policy issued to M.A.I. was not cancelled as a matter of law?

5. Did the trial court err in its rulings during trial?

## ANALYSIS

### I.

■ Appellant, E.R.C., claims it is entitled to a jury trial on the reasonableness of the *Miller v. Shugart* settlement. We disagree. This court has consistently relied on the language in *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982) to conclude that a jury trial is not required in such cases. *Osgood v. Medical, Inc.*, 415 N.W.2d 896, 903 (Minn.Ct.App.1987) *pet. for rev. denied* (Minn. Feb. 12, 1988) ("[T]he determination of the question of reasonableness is a question of law for the court."); *Traver v. Farm Bureau Mutual Insurance Co.*, 418 N.W.2d 727, 732 (Minn.Ct.App.1988) *pet. for rev. denied* (Minn. Apr. 15, 1988) ("The question of the reasonableness of the settlement is a question of law for the court, so would be reviewable by this court on a de novo basis."); *Hartfiel v. McLennan*, 430 N.W.2d 215, 220 (Minn.Ct.App.1988) ("It is for the trial court to determine the reasonableness of a settlement, when it has sufficient facts to make such a determination.").

A further review of the reasonableness inquiry of a *Miller v. Shugart* settlement leads us to conclude the question is more a legal issue than a factual determination. The question revolves around "what a reasonably prudent person * * * would have settled for on the merits of plaintiff's claim." *Miller* at 735. It involves "a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial." *Id.* If the question were whether a jury would

have returned a verdict in an amount equal to or exceeding the settlement, the underlying liability issues of negligence, causation, and comparison of fault would be fact issues to be decided by a jury. However, "the question is not whether the [insured] * * * *would have* been liable for * * * the amount of the settlement; the question is whether the party could have been liable * * *." *Osgood* at 903 (emphasis in the original).

■ The determination of the reasonableness of a *Miller v. Shugart* settlement "requires a consideration of the underlying process that led to the * * * settlement. The inquiry should focus on things such as factual allegations, problems of proof, and risks of going to trial, rather than the already determined liability and damages issues." *Hartfiel*, 430 N.W.2d at 223 (Wozniak, C.J., concurring specially). These factors are considered from the viewpoint of the defendant. *Miller* at 735. The inquiry is whether the settlement was a fair settlement such that the insurer who declined to participate in the settlement negotiations will be required to indemnify. We believe the nature of this inquiry has an equitable character and thus is more a question of law than of fact.

Although appellant claims that under article I, section 4 of the Minnesota constitution it has been granted the absolute right to have the reasonableness determination made by a jury, we disagree.

Article 1 provides:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy.

Minn. Const. art. I § 4.

The term "all cases at law" refers to common law actions as distinguished from causes in equity and certain other proceedings. *Breimhorst v. Beckman*, 227 Minn. 409, 433, 35 N.W.2d 719, 734 (1949) (footnotes omitted). The Supreme Court has "interpreted this section of the constitution in a line of cases beginning with *Whallon v. Bancroft*, 4 Minn. 109, 113 (Gil. 70, 74) (1860)." *Smith v. Bailen*, 258 N.W.2d 118, 120 (Minn.1977). *Whallon* stated:

> The effect of this clause in the constitution is, *first*, to recognize the right of trial by jury as it existed in the Territory of Minnesota at the time of the adoption of the state constitution[.] * * * Wherever the right of trial by jury could be had under the territorial laws, it may now be had, and the legislature cannot abridge it; *and those cases which were triable by the court, without the intervention of a jury, may still be so tried.*

*Id.* at 113 (Gil. at 74) (emphasis added in part).

The action brought here is a garnishment proceeding, a creature of statute not existing under the common law. An examination of the nature of a garnishment proceeding reveals its similarity to the equitable action of a creditor's bill. In fact, the Minnesota Supreme Court has so held:

> Upon such issues as those now under consideration, between a judgment creditor and a garnishee, there is no right of trial by jury. That is settled law here and elsewhere. * * * The reason is that the proceeding against the garnishee is statutory, in the nature of a creditor's bill to reach assets of the defendant, and so not a suit at law wherein the right to trial by jury is guaranteed by section 4 of article 1 of the Constitution of the state. The argument for appellant on this point seems to assume that the mere presence of an issue of fact makes the case one for a jury. That is not the law.

*Bassi v. Bassi*, 165 Minn. 100, 102, 205 N.W. 947, 947–48 (1925). *See also Weibeler v. Ford*, 61 Minn. 398, 63 N.W. 1075 (1895).

In light of the nature of the reasonableness question as outlined in *Miller*, the equitable nature of the statutory garnishment proceeding and the weight of precedent, we hold that appellant has no right to a jury trial on the issue of the reasonableness of a *Miller v. Shugart* agreement.

## II.

■ Appellant also argues that the *Miller v. Shugart* settlement was not reasonable as a matter of law. We disagree.

The test of the reasonableness of a settlement agreement is stated in *Miller:*

> The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the liability and damage aspects of plaintiff's claim, as well as the risks of going to trial.

*Id.,* 316 N.W.2d at 735.

The question is "whether the record shows, as a matter of law, that the stipulated judgment ᵏ ˟ ˟ was reasonable and prudent." *Id.* at 736.

Counsel for M.A.I. and Larson, in his professional judgment, concluded that a trier of fact would have found his clients negligent. The trial court's findings that Larson failed to meet the standard of care imposed on insurance agents because he failed to recognize the need for "tail coverage" and failed to inform Johnson of continuing products liability risks is supported by the record. Expert testimony established the standard. Larson's own admission established the breach.

Evidence on the potential damages included the award to Frederickson against Johnson of $320,000 and Johnson's costs of defending the Frederickson action of $70,000. In addition, there is interest on the Frederickson judgment and attorney fees for defending M.A.I. and Larson in the Johnson suit, which brings the total exposure of the settling defendants to well in excess of $400,000. As a result of the *Miller v. Shugart* settlement, the Johnson claim was reduced to $300,000. With this background, there exists sufficient competent evidence to meet the *Miller* test. We thus affirm the trial court's determination that the settlement was reasonable as a matter of law.

### III.

◼ The trial court included in the judgment against E.R.C. the sum of $16,250 in favor of Johnson for attorney fees in defending the insurance coverage case. E.R.C. argues that because the *Miller v. Shugart* agreement is, in effect, an assignment of interests, which is expressly prohibited in the policy, Johnson is not entitled to attorney fees. We disagree. As the trial court reasoned, this is not an assignment of an interest prior to loss on behalf of the insured, nor are rights of coverage for losses which might be sustained by the assignee under the policy being transferred. Instead, what was assigned was the judgment debtors' breach of contract action for failure to defend and indemnify.

The trial court here disallowed attorney fees related to the reasonableness of the *Miller v. Shugart* settlement and for the "garnishment proceedings." The award of attorney fees was based solely on breach of contract and coverage questions. Attorney fees are recoverable by those who are successful in establishing coverage after coverage has been denied. "The district court properly awarded the insured the costs and attorney's fees incurred in ˟ ˟ ˟ defense of the ˟ ˟ ˟ action because the insurer breached its duty to defend ˟ ˟ ˟" *Brown v. State Automobile & Casualty Underwriters,* 293 N.W.2d 822, 826 (Minn.1980). Johnson is therefore entitled to attorney fees both as assignee of the insured, M.A.I., and in its capacity as judgment creditor in defending against E.R.C.'s denial of coverage.

### IV.

◼ The trial court found that appellant was indebted to Johnson, the judgment creditor, in an amount of $300,000 plus prejudgment interest thereon from October 13, 1987, the date of the garnishment summons. Appellant argues that prejudgment interest is improper. Respondents, on the other hand, reference Minn.Stat. § 549.09 (1988) as allowing prejudgment interest. We hold that Minn.Stat. § 549.09 is inapplicable and reverse as to the prejudgment interest award.

Minn.Stat. § 549.09 allows preverdict interest on pecuniary damages from the time of the commencement of the action. However, the garnishment action here is to determine under contract law whether, and if so in what amount, E.R.C., the gar-

nishee, is obligated to M.A.I. and Larson the judgment debtors in order to satisfy Johnson's judgment against M.A.I. and Larson. *See* Minn.Stat. § 571.54 (1988). The action here is a combined declaratory judgment action on the insurance contract along with a determination of whether the judgment debtor has entered into a reasonable settlement which the garnishee must indemnify. The judgment ultimately entered here, strictly speaking, is not for "pecuniary damages."

In *Miller* the Supreme Court disallowed interest on the *Miller v. Shugart* judgment stating:

> Plaintiff's stipulated judgment was not conclusive on the insurer until the insurer had an opportunity to litigate the issues of whether it was bound by the judgment. It was not until the garnishment proceeding of March 25, 1981 [judgment date], that a judicial determination was made that Milbank was liable for $50,000 on the stipulated judgment. Milbank does not have to pay interest on a sum neither it nor its insureds owe.

*Id.*, 316 N.W.2d at 736 (footnote omitted).

Similarly here, the judgment debtors owe nothing under the settlement and judgment except the $1,500 they personally have agreed to pay. M.A.I. and Larson have no interest obligation. Until the case was fully litigated, E.R.C. was not bound by the settlement and had no obligation to pay. To allow prejudgment interest on this garnishment judgment would thus allow interest covering the same time period as the postjudgment interest on the stipulated judgment. *Miller* concluded that postjudgment interest was inappropriate under such circumstances. We conclude prejudgment interest is inappropriate here, as well.

### V.

■ The trial court determined as a matter of law that E.R.C.'s policy with M.A.I. and Larson was not cancelled. Appellant argues that this issue should have been submitted to a jury. We disagree. "The interpretation and construction of an insurance policy is a matter of law, and this court may determine whether the trial court properly interpreted and applied the law to the facts presented." *Hennings v. State Farm Fire and Casualty Co.*, 438 N.W.2d 680, 683 (Minn.Ct.App.1989) *pet. for rev. denied* (Minn. June 9, 1989) (citing *State Farm Mutual Automobile Insurance Co. v. Budget Rent–A–Car Systems, Inc.*, 359 N.W.2d 673, 675–76 (Minn.Ct.App. 1984)); *Honeymead Products Co. v. Aetna Casualty and Surety Co.*, 275 Minn. 182, 146 N.W.2d 522 (1966).

Testimony at trial revealed that the policy in question was continuous. E.R.C.'s representative admitted that no notice of cancellation had been given to the insured as required by the language of the policy. The policy itself provides that it "shall continue in force until cancelled as hereinafter provided." We conclude therefore that the trial court did not err in ruling as a matter of law that the policy had not been cancelled.

Even if the question of cancellation could be considered a fact question for a jury to decide, the issue is now moot. By special verdict the jury determined that Johnson had made a claim against Larson and M.A.I. in October of 1980 and that Larson notified E.R.C. at that time. There is no question but that the policy was in effect in October of 1980.

### VI.

Appellant claims errors were made by the trial court during the jury trial. We have reviewed each claim and find no error.

#### a.

■ Appellant claims that statements made by opposing counsel, indicating that Larson and M.A.I. were at fault in not providing insurance coverage for Johnson, and that the original plaintiff, Frederickson, was still trying to collect on the judgment, were prejudicial. The trial court reasoned that these statements were not prejudicial because the information they conveyed was implicit in the very nature of the action before the court. We agree. In any event, these statements had little bearing on the coverage question and we conclude that it was not an abuse of discretion for

the trial court to deny appellant's motion for a mistrial.

### b.

■ Appellant also argues that it was error for the trial court to admit the *Miller v. Shugart* agreement into evidence during the determination of the coverage question. Rulings on the admissibility of evidence are left to the sound discretion of the trial court. *In re Conservatorship of Torres*, 357 N.W.2d 332, 341 (Minn.1984). It appears from the transcript that appellant questioned Larson concerning the *Miller v. Shugart* agreement. It was within the trial court's discretion to allow the document into evidence to avoid confusion of the jury.

### c.

■ Appellant also contends that a curative instruction given by the trial judge was prejudicial. The instruction in question was intended to correct misstatements made by appellant's counsel and merely reiterated the determination that the policy had not been cancelled as a matter of law. The trial court has broad latitude in determining the propriety of specific jury instructions. *Clark v. Miller*, 378 N.W.2d 838, 846 (Minn.Ct.App.1986) *pet. for rev. denied* (Minn. March 14, 1986). In light of this latitude we find that the trial court was within its discretion in instructing the jury.

### d.

■ Finally, appellant contests the trial court's use of the word "claim" in the first special verdict question. Since appellant's counsel expressly agreed to the instruction, we find no preserved claim of error.

### DECISION

We affirm the trial court's determination that the reasonableness of a *Miller v. Shugart* agreement is to be decided by the court and that the settlement in this case was reasonable as a matter of law. Further, we affirm the trial court's award of reasonable attorney fees against the garnishee insurance company. The trial court's rulings on admissibility of evidence,

comments by counsel, verdict form and curative instructions are affirmed, as well. Finally, we reverse the trial court's award of prejudgment interest against the garnishee and remand for amendment of the judgment accordingly.

Affirmed in part, reversed in part and remanded.

FOLEY, Judge (dissenting).

I respectfully dissent and reaffirm my consistent position in *Miller–Shugart* settings that the fundamental right to trial by jury should be honored.

I reassert here the rationale of my dissent in *Hartfiel v. McLennan*, 430 N.W.2d 215 (Minn.Ct.App.1988), that the right to trial by jury on the question of reasonableness of a *Miller–Shugart* settlement is guaranteed by the Minnesota Constitution:

> "The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy. A jury trial may be waived by the parties in all cases in the manner prescribed by law. The legislature may provide that the agreement of five-sixths of a jury in a civil action or proceeding, after not less than six hours' deliberation, is a sufficient verdict."

*Hartfiel*, 430 N.W.2d at 223 (quoting Minn. Const. art. I, § 4). *See* Minn.R.Civ.P. 38.01 and 39.01. I reiterate here what the Minnesota Supreme Court said in *Miller v. Shugart*, 316 N.W.2d 729 (Minn.1982):

> [W]hile the judgment is binding and valid as between the stipulating parties, it is not conclusive on the insurer. The burden of proof is on the claimant, the plaintiff judgment creditor, to show that the settlement is reasonable and prudent. The test as to whether the settlement is reasonable and prudent is what a reasonably prudent person in the position of the defendant would have settled for on the merits of plaintiff's claim. This involves a consideration of the facts bearing on the *liability and damage aspects of plaintiff's claim*, as well as the risks of going to trial.

*Id.* at 735 (emphasis added).

I submit that it was not the holding of *Miller* that in *every* case where reasonable-

ness is to be determined that *only* a court trial be held. We are concerned here with a fundamental constitutional right that should not be lightly set aside by court rule or case law. In my dissent in *Hartfiel,* I reasoned:

My colleagues and I differ as to the nature of the proceeding on remand to determine reasonableness, i.e., by a motion for summary judgment—a court trial—or a jury trial. It may be that each case that involves a *Miller–Shugart* settlement will have to be separately examined as to the manner and way in which the issues are raised and to be litigated.

In negligence cases where damages are sought for either or both personal injury or property damage, it is fundamental law that trial by jury is awarded the parties, unless waived. *See* Minn. Const. art. I, § 4. It should be no different with respect to a *Miller–Shugart* settlement. Since the settlement is not binding on the insurer, *Miller,* 316 N.W.2d at 735, and since reasonableness is tested by a consideration of the *entire circumstances as to liability and damages,* the right to trial by jury should be preserved, including the issue of comparative fault.

*Hartfiel,* 430 N.W.2d at 223–24 (citation omitted).

When *Economy Fire & Casualty Co. v. Iverson,* 445 N.W.2d 824 (Minn.1989), was heard by the supreme court, I had hoped that the supreme court would answer the question as to jury trial, but the supreme court apparently determined it was not necessary to decide the issue. I now respectfully urge the supreme court, either in this case or at an early date, to directly deal with the question of jury trials in *Miller–Shugart* settings so that trial attorneys and trial courts, as well as the court of appeals, will have a clear understanding of the full meaning of *Miller.*